**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul George KRATSAS, a/k/a P. J.
Kratsas, Defendant–Appellant.**

No. 93–5509.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1994.

Decided Jan. 17, 1995.

**ARGUED:** Jack B. Rubin, Jack B. Rubin, P.A., Baltimore, MD, for appellant. Barbara Suzanne Skalla, Asst. U.S. Atty., Baltimore,

MD, for appellee. **ON BRIEF:** Lynne A. Battaglia, U.S. Atty., Baltimore, MD, for appellee.

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge MOTZ joined. Judge NIEMEYER wrote a separate opinion concurring in the judgement.

## OPINION

MURNAGHAN, Circuit Judge:

On June 2, 1992, a federal grand jury returned a single-count indictment charging Paul George Kratsas with conspiracy to distribute and with possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. A superseding indictment was returned on July 8, 1992, which added a money laundering count under 18 U.S.C. § 1956(a)(1)(B).

Kratsas was convicted of both counts on March 18, 1993. In a sentencing hearing held on June 22, 1993, the United States District Court for the District of Maryland sentenced Kratsas to mandatory life imprisonment without release pursuant to 21 U.S.C. § 841(b)(1)(A), correctly noting that a statutorily mandated sentence must control when the applicable range under the United States Sentencing Guidelines would otherwise provide for a lower sentence. The district court also imposed a 70–month sentence for the money laundering count to run concurrently with the life sentence.

Kratsas now appeals the district court's sentence, in particular challenging the constitutionality of the sentence under the Eighth Amendment to the Constitution.

### I. Factual Background

■ On June 2, 1992, Kratsas was indicted for conspiracy to distribute and for possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846. On July 8, 1992, a superseding indictment was filed against Kratsas, restating the original indictment, and adding a count of money laundering arising from the purchase of a motorcycle, on April 25, 1992, with proceeds from previous drug sales. On February 17, 1993, the government filed an Information of Prior Convictions, Statement of Drug Quantity, and Notice of Enhanced Sentencing Provisions, which specified, among other things, that the government intended to rely on Kratsas's two prior felony drug convictions to seek a mandatory minimum penalty of life in prison without release. A jury trial commenced on March 1, 1993, and Kratsas was convicted of both counts on March 18, 1993.

On June 22, 1993, a sentencing hearing was held before the United States District Court for the District of Maryland. At the sentencing hearing, the attorney for the government informed the district court that the government would seek the maximum mandatory sentence under the applicable statute, 21 U.S.C. § 841(b). The district court correctly found that such a statutorily mandated sentence must control when the applicable sentencing range under the United States Sentencing Guidelines would otherwise provide for a lower sentence. Accordingly, the district court, although declining the government's request to impose, in the alternative, a sentence pursuant to the Guidelines, made several findings crucial to the calculation of a sentence under the Sentencing Guidelines: (1) at trial, the evidence demonstrated that at least 18 kilograms of cocaine were "directly attributable" to Kratsas;[1] (2) Kratsas was an "organizer or leader" in the drug conspiracy; (3) Kratsas possessed a "dangerous weapon" during the course of the conspiracy; and (4) Kratsas had been convicted twice previously of drug felonies. In light of those considerations, the court found that the proper sentencing range under the Sentencing Guidelines would be from 360 months to life in prison.

■ The district court correctly found that because the mandatory minimum life sentence prescribed in 21 U.S.C. § 841(b) there-

---

1. Kratsas implies in his brief that this 18 kilogram calculation may have been incorrect, but fails to point to any evidence that would support this allegation. In any event, such a challenge to a district court's finding that certain amounts of drugs are attributable to a defendant is a ques-

tion concerning the factual findings of the sentencing court, and thus should be reviewed only for "clear error." *United States v. D'Anjou*, 16 F.3d 604, 614 (4th Cir.1994), *cert. denied*, ——— U.S. ———, 114 S.Ct. 2754, 129 L.Ed.2d 871 (1994).

fore exceeded the applicable Guidelines sentencing range, the statutory minimum must be applied. Accordingly, the district court imposed a mandatory life sentence without release, stating:

> It is not without considerable misgivings that the Court sentences a 28–year old man to spend the rest of his life behind bars. Unfortunately, however, in the Court's view, the defendant has brought this upon himself by choosing to distribute kilo quantities of cocaine after having twice been convicted of drug felonies at the state level. On each of these prior occasions, the state courts dealt with the defendant very leniently and provided him with the opportunity to rehabilitate himself. Having failed to do so, the defendant must now pay the extremely stiff price which Congress has deemed appropriate for those like him who have chosen to make the distribution of narcotics a considerable part of their life's work.

The court also imposed a 70–month sentence for the money laundering count to run concurrently with the life sentence.

Kratsas now challenges the constitutionality of the sentence under the Eighth Amendment.

## II. Discussion

■ Section 841(b) of Title 21 of the United States Code provides for a mandatory life sentence without release for participants in certain drug offenses involving five or more kilograms of cocaine. Specifically, the statute provides:

> If any person commits a violation of this subparagraph or of section 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release. . . .

21 U.S.C. § 841(b)(1)(A). Kratsas challenges the constitutionality of that provision under the Eighth Amendment on two separate grounds: (1) section 841(b), as applied in his case, resulted in a sentence unconstitutionally "disproportionate" to the offense committed, and (2) the mandatory nature of the sentence imposed pursuant to section 841(b)

deprived the sentencing judge of his proper discretion to consider mitigating factors and thereby to afford Kratsas individualized sentencing. Because the law is well settled that mandatory life sentences are constitutional when applied to prior drug felony offenders, we affirm the district court's sentence under the proper *de novo* standard of review.

The Supreme Court has definitively held that, as applied to most repeat drug offenders, a life sentence is not violative of the Eighth Amendment's prohibition against cruel and unusual punishment. Indeed, the Supreme Court's two most important decisions on the issue suggest that Kratsas's "proportionality" challenge to his life sentence, and his challenge to the mandatory nature of the sentence, are both unavailing.

The Supreme Court's most recent consideration of the constitutionality of a mandatory life sentence was in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In *Harmelin*, the Supreme Court addressed an appeal by a petitioner who was convicted under a Michigan statute for possessing more than 650 grams of cocaine, and was sentenced to a mandatory term of life in prison without the possibility of parole. 501 U.S. at 961, 111 S.Ct. at 2684. In particular, the Court addressed and rejected two Eighth Amendment arguments by the petitioner, identical to those advanced by Kratsas here: (1) that the life sentence was "significantly disproportionate" to the crime committed, and (2) that the mandatory nature of the sentence unconstitutionally required the sentencing judge to impose a life sentence without considering the particularized circumstances of the crime or the criminal. *Id.* at 961–62, 111 S.Ct. at 2684. Justice Scalia delivered the opinion of the Court with regard to the petitioner's second argument; the Court, however, produced three separate, and somewhat unharmonious, opinions as to the petitioner's first contention.

First, the majority of the *Harmelin* Court rejected Kratsas's "proportionality" challenge to his sentence, but did so on varying grounds. Justice Scalia, joined by Justice Rehnquist, based his decision on the conclusion that the "cruel and unusual punishment"

provision of the Eighth Amendment does not encompass a proportionality guarantee. 501 U.S. at 984, 111 S.Ct. at 2696. In support of this conclusion, Justice Scalia conducted an extensive historical survey of the Cruel and Unusual Punishment Clause, and found, "The Eighth Amendment is not a ratchet, whereby a temporary consensus on leniency for a particular crime fixes a permanent constitutional maximum, disabling the States from giving effect to altered beliefs and responding to changed social conditions." *Id.* at 990, 111 S.Ct. at 2699. Justice Scalia found, therefore, that although proportionality review would still remain important for death penalty cases, "we will not extend it further" except in very rare instances.[2] *Id.* at 994, 111 S.Ct. at 2701. Justice Kennedy, joined by Justice O'Connor and Justice Souter, although concurring in the result, found that the Eighth Amendment does encompass a narrow proportionality principle that applies to noncapital sentences. *Id.* at 997, 111 S.Ct. at 2702–03. Justice Kennedy found, however, that the sentence at issue did not contravene the narrow proportionality guarantee because of the serious nature of the drug offense committed. *Id.* at 1002, 111 S.Ct. at 2705–06. Justices White, Blackmun, Stevens, and Marshall dissented, finding that the Eighth Amendment includes a well-established proportionality guarantee that had indeed been contravened. *Id.* at 1021, 1027, 111 S.Ct. at 2715–16, 2718–19.

■ The *Harmelin* Court also rejected the petitioner's second claim that the life sentence was unconstitutional because it was mandatory, and thus precluded the consideration of mitigating factors by the sentencing court. 501 U.S. at 994, 111 S.Ct. at 2701. In particular, the Court held:

As our earlier discussion should make clear, this claim has no support in the text and history of the Eighth Amendment. Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history.

As noted earlier, mandatory death sentences abounded in our first Penal Code.... There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is "mandatory."

*Id.* at 994–95, 111 S.Ct. at 2701. Accordingly, the Court held that individualized sentencing is constitutionally required only in capital cases, and saw "no basis for extending it further." *Id.* at 996, 111 S.Ct. at 2702.

The Supreme Court's *Harmelin* decision, particularly its rejection of the petitioner's proportionality challenge to his life sentence, may have cast some doubt upon the Court's earlier decision in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), a case on which Kratsas places great reliance. The Supreme Court in *Solem,* in considering the constitutionality of a mandatory life sentence imposed pursuant to a South Dakota recidivist statute, articulated a three-part test for analyzing proportionality claims under the Eighth Amendment. 463 U.S. at 290, 103 S.Ct. at 3009–10. In holding that the mandatory life sentence in that case did not pass constitutional muster, Justice Powell, writing for the Court, held that "[t]he constitutional principle of proportionality has been recognized explicitly in this Court for almost a century." *Id.* at 286, 103 S.Ct. at 3007–08. In so finding, the Court articulated three factors to be considered in conducting such a proportionality review: (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3011. Under that three-factor test, the Court found that the mandatory life sentence imposed pursuant to South Dakota's recidivist statute ran afoul of the Eighth Amendment's prohibition against cruel and unusual punishment because: (1) the crime of uttering a "no account" check for $100 is "one of the most passive felonies a person

---

2. In describing this exception to his general refusal to conduct proportionality reviews in noncapital cases, Justice Scalia stated:

This is not to say that there are no absolutes; one can imagine extreme examples that no

rational person, in no time or place, could accept. But for the same reason these examples are easy to decide, they are certain never to occur.

501 U.S. at 985–86, 111 S.Ct. at 2696–97.

could commit," (2) a life sentence without parole is an extremely severe punishment for such a crime, (3) life imprisonment is generally imposed only for much more heinous offenses such as manslaughter, treason, arson, or kidnapping, and (4) the sentences imposed for commission of the same crime in other jurisdictions are much less severe than life incarceration. *Id.* at 296–300, 103 S.Ct. at 3012–15.

It may be somewhat unclear, in light of the Supreme Court's decision in *Harmelin,* whether *Solem* 's three-part proportionality test is still relevant in noncapital cases. *See United States v. Johnson,* 944 F.2d 396, 408 (8th Cir.1991) ("The effect of *Harmelin* on the *Solem* proportionality factors is not entirely clear."); *United States v. Angulo–Lopez,* 7 F.3d 1506, 1509 (10th Cir.1993) ("*Harmelin* provides no guidance in articulating the proper approach for an Eighth Amendment review."); *United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994) ("[T]he holding of *Solem* has been put into doubt by *Harmelin v. Michigan.*"). Indeed, as noted above, the *Harmelin* Court issued three separate, and somewhat conflicting, opinions discussing the scope of the Eighth Amendment's proportionality guarantee, which ranged from a virtual repudiation of *Solem* by Justices Scalia and Rehnquist, to a recognition of a "narrow" proportionality doctrine by Justices Kennedy, O'Connor, and Souter, to an explicit approval of *Solem* by Justices White, Blackmun, Stevens, and Marshall. *See United States v. Sarbello,* 985 F.2d 716, 723 (3d Cir.1993). Despite the Court's conflicting opinions on the issue, however, the continuing applicability of the *Solem* test is indicated by the fact that a majority of the *Harmelin* Court either declined expressly to overrule *Solem* or explicitly approved of *Solem.* Indeed, the Fourth Circuit has continued to use the *Solem* test in conducting proportionality reviews under the Eight Amendment for cases involving life sentences or the death penalty.

In *United States v. D'Anjou,* 16 F.3d 604 (4th Cir.1994), *cert. denied,* — U.S. —, 114 S.Ct. 2754, 129 L.Ed.2d 871 (1994), for example, a case in which the appellant had been convicted for violating certain narcotics and firearms laws, we recently rejected a constitutional challenge to a sentence of life without parole imposed pursuant to the United States Sentencing Guidelines. In first considering the appellant's proportionality challenge to the life sentence, we turned to the three-part test articulated by the Supreme Court in *Solem,* noting that we have always held that "outside the capital sentencing context, an extensive proportionality analysis is required only in those cases involving life sentences without parole." 16 F.3d at 612.

Under the *Solem* test, we found that the sentence of life without parole in that case did not amount to a "disproportionate" punishment, and thus did not run afoul of the Eighth Amendment. Applying *Solem* 's first prong, we found that the appellant's offense was extremely grave because: (1) drug use is a "pervasive, destructive force in American society"; (2) the appellant was not merely a user or even a single distributor of drugs, but was the "manager" of a ring of dealers who supplied drugs to distributors and converted crack from wholesale to retail quantities; (3) while the appellant was not the "mastermind" of the operation, he nevertheless had "significant responsibility" for the operation; and (4) the appellant had distributed more than five kilograms of crack over a six-month period. *Id.* at 613. Applying *Solem* 's second prong, we found that although "it is difficult to undertake the type of comparative analysis that the pre-guidelines *Solem* decision advises," those courts that have done so have found that a "life sentence for a major drug violation is not disproportionate in comparison with other sentences under the Guidelines." *Id.* Applying *Solem* 's third prong, we noted that a review of the state statutes within the circuit disclosed the existence of "similarly severe sentences for narcotics violations of the magnitude involved here." *Id., citing* N.C. Gen.Stat. § 90–95(h)(3)(c) (35 years to life for 400 or more grams of cocaine); S.C.Code Ann. § 44–53–370(e)(2)(e) (25 to 30 years with 25 year mandatory minimum for 400 or more grams of cocaine); Va.Code Ann. § 18.2–248(C) (40 year maximum on first violation). In accordingly finding that the sentence passed constitutional muster, we held:

[G]iven that drug dealers themselves sentence many individuals to a lifetime of addiction and dependency, a life sentence for repeatedly dealing drugs cannot be considered disproportionately cruel and unusual.

*Id.* (citations omitted).

Second, the *D'Anjou* Court, in light of the Supreme Court's decision in *Harmelin,* rejected the appellant's Eighth Amendment challenge to the life sentence on the grounds that the judge had not considered relevant mitigating factors before imposing the sentence. 16 F.3d at 613. Specifically, we noted that *Harmelin* had found that a sentence of life without parole does not require the consideration of mitigating factors, as is required in the death penalty context, to avoid running afoul of the Eighth Amendment. *Id.* Accordingly, it was held that "[s]ince a mitigating factors analysis is not required to avoid an Eighth Amendment violation, this necessarily means that the imposition of life without parole is not cruel and unusual." *Id.* at 613–14.[3]

In light of the Supreme Court's decisions in *Harmelin* and *Solem,* as interpreted by this Court in *D'Anjou,* we affirm the district court's sentence, finding that a mandatory sentence of life imprisonment without release, as applied to a repeat drug offender, did not run afoul of the Eighth Amendment's prohibition against cruel and unusual punishment here. In so holding in Kratsas's case, we find that (1) under the *Solem* test, the sentence is not disproportionate to the offense committed,[4] and (2) as held in *Harmelin,* the mandatory nature of the sentence does not thereby render the sentence unconstitutional.

First, we reject Kratsas's claim that a sentence of life without parole is a "disproportionate" punishment under the Eighth Amendment. Indeed, application of the *Solem* three-part test to the instant case suggests that the sentence of life imprisonment without release, as applied to Kratsas, passes muster under the Eighth Amendment. In applying *Solem*'s first prong, we find that the offense of drug distribution by Kratsas is immensely grave, particularly because: (1) Kratsas is not just a drug user, or a single distributor, but part of a ring of distributors; (2) a large amount of cocaine, specifically 18 kilograms, was directly attributable to Kratsas; and (3) Kratsas was a repeat drug offender. Applying the second prong of *Solem,* it is clear that a life sentence for a major drug violation is not disproportionate in comparison with other sentences mandated by the Guidelines and other drug statutes. *See D'Anjou,* 16 F.3d at 613. Last, applying the third prong of *Solem,* a survey of drug statutes in states within the Fourth Circuit reveals the existence of harsh sentences for narcotics violations of the magnitude involved in the instant case. *See, e.g.,* Va.Code Ann. § 18.2–248(C) ("[u]pon a second or subsequent conviction of such a violation, any such person may, in the discretion of the court or jury imposing the sentence, be sentenced to imprisonment for life. . . ."); S.C.Code Ann. § 44–53–370(e) (a trafficker of more than 400 grams of cocaine can be sentenced up to 30 years in prison, with a mandatory minimum of 25 years without probation). Thus, under *Solem,* we hold that the sentence of mandatory life imprisonment without release imposed in the instant case is not a "disproportionate"

---

**3.** Other circuits have generally concurred in the Fourth Circuit's general reluctance to hold life sentences for repeat drug traffickers unconstitutional under the Eighth Amendment. *See United States v. Angulo–Lopez,* 7 F.3d 1506 (10th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994) (finding under *Solem* and *Harmelin* that a sentence of life imprisonment without the possibility of parole was not a "disproportionate" punishment where evidence revealed that the defendant had been involved in a conspiracy to distribute 47.82 kilograms of cocaine base); *United States v. Sturmoski,* 971 F.2d 452, 462 (10th Cir.1992) (finding under the *Solem* test, that "a life sentence for a drug trafficker does not violate the Eighth Amendment");

*United States v. Johnson,* 944 F.2d 396 (8th Cir. 1991), *cert. denied,* 502 U.S. 1008, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991) (finding that under Justice Kennedy's concurring opinion in *Harmelin,* a proportionality review was not required at all for a mandatory life sentence imposed under 21 U.S.C. § 841(b) because the appellant's sentence was not "grossly disproportionate" to his offense).

**4.** The doctrinal choice in favor of applying the three-part *Solem* test here is consistent with our decision in *D'Anjou,* and is supported by the fact that the majority of the Supreme Court in *Harmelin* voted not to overrule *Solem.*

punishment, and thus does not run afoul of the Eighth Amendment's guarantee against cruel and unusual punishment.

Second, the fact that the life sentence imposed in the instant case is mandatory, does not render it unconstitutional. Under the Supreme Court's holding in *Harmelin*, and our decision in *D'Anjou*, it is clear that a sentence of life without parole does not require the consideration of mitigating factors, as is required in the death penalty context, in order to pass constitutional muster. *See D'Anjou*, 16 F.3d at 613. Thus, the mere fact that the life sentence was mandatorily imposed does not render it "cruel and unusual." *See also United States v. Abreu*, 962 F.2d 1425, 1428 (10th Cir.1992), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993) (mandatory minimum punishment prescribed by the Armed Career Criminal Act is not unconstitutional on the ground that it deprives defendant of individualized sentencing). Kratsas's contention that the sentencing judge in the instant case was unconstitutionally precluded from considering mitigating factors in sentencing is unavailing.

■ Finally, Kratsas, in urging the Court to follow its holding in *United States v. Deigert*, 916 F.2d 916 (4th Cir.1990) (per curiam), severely misstates the applicability of that decision to the instant case. In *Deigert*, we remanded a Sentencing Guidelines case to the district court because the record did not clearly elucidate the reasons underlying the sentencing court's decision to depart downward in the exercise of its discretion. 916 F.2d at 919. That holding has no relevance to the instant case, however, because here, the sentencing court was bound by a *mandatory statute* to impose a life sentence. Because the district court in the instant case could not exercise discretion in sentencing, there is no reason to remand this case to allow the court to articulate the reasons for its decision. *Deigert* is inapposite.[5]

Accordingly, the judgment is

*AFFIRMED.*

NIEMEYER, Circuit Judge, concurring in the judgment:

The opinions of Justice Scalia and Justice Kennedy in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), representing a majority of the Supreme Court, support *at most* the application of a narrow proportionality principle that would have the Eighth Amendment forbid only "extreme sentences that are 'grossly disproportionate' to the crime." 501 U.S. at 1001, 111 S.Ct. at 2705 (Kennedy, J., concurring). As Justice White's dissenting opinion argues, 501 U.S. at 1009, 1020, 111 S.Ct. at 2709, 2715 (White, J., dissenting), the narrow proportionality test articulated by Justice Kennedy for the case before the Court appears to reduce the three-pronged test of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to the *single inquiry* of whether the punishment was "grossly disproportionate" to the crime, a determination for which intrajurisdictional and interjurisdictional analyses *may* be relevant, but only in *rare* cases. *See* 501 U.S. at 1005, 111 S.Ct. at 2707 (Kennedy, J., concurring). The instant case, however, is assuredly *not* one of the rare cases to which Justice Kennedy refers. Accordingly, I do not believe that we should revert to applying the three-pronged proportionality test of *Solem*, as the majority in this case has elected to do. Rather, we should dispose of this case simply on the basis of the *Harmelin* holding. *Harmelin* held that a mandatory life sentence without possibility of parole imposed by a state for possession of 672 grams of cocaine did not violate the Eighth Amendment. Because the case before us involves a life sentence for distribution of at least 18 kilograms of cocaine by a defendant who had two prior felony drug convictions, the holding of *Harmelin* is dispositive. Thus, any discussion by the majority about the appropriate-

---

5. Kratsas, in his brief, also appears to make a Due Process argument based on the contention that the "prosecutor, by virtue of his charging discretion, took over the sentencing responsibility, and thereby disturbed [] due process...." The argument is unavailing because prosecutors *always* possess the discretion to ask the court to impose certain sentences. Because the sentencing court is never bound to follow the prosecutor's suggestions, the prosecutor does not in any way "take over the [judge's] sentencing responsibility," as contended by Kratsas.

ness of applying the *Solem* three-pronged test and the conclusion the majority reaches to do so are, I respectfully submit, mere dicta. More troubling, however, is the notion that through such dicta the court might tend improperly to suggest that the three-pronged proportionality test of *Solem* is still viable in cases such as this, despite the position taken by five justices in *Harmelin.*

For the foregoing reasons, I concur only in the judgment.