**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JERMAINE JERRELL SIMS, a/k/a Justice,
a/k/a Jus,
Defendant-Appellant.

No. 99-4266

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-98-45)

Argued: October 29, 1999

Decided: January 12, 2000

Before WILKINS and WILLIAMS, Circuit Judges, and
Gerald Bruce LEE, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gerald Thomas Zerkin, GERALD T. ZERKIN & ASSO-
CIATES, Richmond, Virginia, for Appellant. Kenneth E. Melson,
Assistant United States Attorney, Steven John Mulroy, Special Assis-
tant United States Attorney, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Melanie H. Moore, GERALD T. ZERKIN & ASSO-

CIATES, Richmond, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jermaine Jerrell Sims was convicted on six counts for his role in a bank robbery that resulted in the death of a bank teller. Pursuant to his conviction under 18 U.S.C.A. § 2113(a) and (e) (West Supp. 1999), the district court sentenced Sims to the statutory minimum of life imprisonment. Prior to sentencing, Sims moved for a new trial on the basis of newly discovered evidence. The district court denied the motion for a new trial because the newly proffered evidence was cumulative of that presented at trial and insufficient to produce an acquittal. Sims moved for reconsideration of the court's denial, offering additional newly discovered evidence, and the district court again rejected Sims's argument. On appeal, Sims contends that his life sentence without the possibility of parole is so disproportionate to his crime that it violates the Eighth Amendment prohibition against cruel and unusual punishment and that the district court erred in denying his motion for a new trial. Finding no merit to Sims's arguments, we affirm his conviction and sentence.

I.

On January 30, 1997, two armed men, LaFawn Bobbitt and Rashi Jones, entered a NationsBank in Richmond, Virginia. Shortly after entering the bank, the men opened fire, killing a bank teller and wounding three others. Bobbitt and Jones fled the scene with $10,000 from the bank. The two were later tried and convicted for their crimes and each received a life sentence without the possibility of parole.

2

Soon after the investigation began, the police began to suspect that Jermaine Sims was involved in the bank robbery. Two of the semiautomatic weapons used in the slaying, a DPMS A-15 and a TEC-DC9, were determined to have been purchased by Sims. [1] In addition, Sims's fingerprints were found on a can of lighter fluid that Bobbitt and Jones left behind at the bank. Because of this evidence, Sims was arrested for the robbery on February 11, 1997. Although investigators later determined that Sims was not one of the two actual perpetrators of the bank robbery and identified Bobbitt and Jones as the gunmen, Sims's involvement remained clear.

Following a bench trial in the United States District Court for the Eastern District of Virginia, the district court determined that Sims actively participated in the planning of the bank robbery. Sims purchased the A-15 and TEC-DC9 just days before the robbery, as well as the ammunition used in those weapons, and three cans of lighter fluid that were to be used in torching the bank after the robbery. The district court also found that, after the robbery, Sims was responsible for controlling the stolen money and providing his girlfriend's college dormitory room as a safehouse for Bobbitt and Jones.

At trial, Sims attempted to demonstrate that he was not involved in the robbery, its planning, or the related events following the robbery. The evidence he presented included testimony from three witnesses concerning statements made by Bobbitt and Jones prior to their arrest. Angela Elliot, the sister of Sims's girlfriend, testified that while she and Bobbitt were watching a television news report of Sims's arrest, Bobbitt "said that it was crazy, he didn't know why they would arrest [Sims]. And said that [Sims] . . . didn't do it." (J.A. at 132.) Latisha Donaldson testified that while she watched a similar news broadcast with Jones, Jones said that Sims"didn't do it. He just purchased the guns." (J.A. at 419.) Finally, Dibone Toone testified that he and Jones also watched a news account of Sims's arrest together, during which Jones said, "I don't know what they locked him up for. He didn't have nothing to do with it." (J.A. at 420.) The trial judge expressly noted that the only probative significance he

_____

[1] Although neither of these firearms was used to kill the bank teller, the A-15 was used to seriously wound a security guard. The TEC-DC9 apparently malfunctioned when Jones attempted to fire it.

3

attributed to these three witnesses' testimony was that Sims was not in the bank when the robbery took place.

Sims was convicted on six counts related to the bank robbery, including Count Two, which was for aiding and abetting a bank robbery that resulted in death. See 18 U.S.C.A.§ 2113(a) and (e) (West Supp. 1999); 18 U.S.C.A. § 2 (West 1969). After his trial, Jones moved pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial on the basis of newly discovered evidence. This evidence consisted of testimony from his brother, Javar Sims, and a friend, Jamaal McCall. These two individuals were prepared to testify that Bobbitt told them that Sims had nothing to do with the robbery. The trial judge denied the motion for a new trial because the new evidence was cumulative of Elliot's, Donaldson's, and Toone's trial testimony and was not likely to produce an acquittal. Undeterred, Sims moved for reconsideration of the denial of a new trial and this time supported his motion with a more complete statement purportedly exculpating him from the crime. In this motion, Sims proffered statements from another witness to the effect that Bobbitt stated that Sims "did not know anything about the robbery before it occurred." (J.A. at 469.) Again, the district court denied the motion on the ground that this newly discovered evidence was cumulative of statements considered at trial and would not produce an acquittal. The district court noted that the evidence was "not sufficient to produce an acquittal in light of the substantial circumstantial evidence supporting the defendant's prior knowledge of the robbery." (J.A. at 480.)

The district court sentenced Sims to life imprisonment plus 120 months. The life sentence was imposed because it was the mandatory minimum under 18 U.S.C.A. § 2113(a) and (e). **2**

---

**2** We note that the district court also sentenced Sims to life imprisonment for his conviction on Count Four for causing the death of another by the use of a firearm while engaged in a crime of violence, under 18 U.S.C.A. § 924(j)(1) (West Supp. 1999) and§ 2 (West 1969). Unlike 18 U.S.C.A. § 2113(a) and (e) (West Supp. 1999), however, § 924(j) does not require courts to impose a minimum sentence of life imprisonment. Because the district court clearly acknowledged that it was statutorily constrained to impose a life sentence for Sims's conviction on Count Two for violating § 2113(a) and (e), we focus on the constitutionality of his sentence under that statute.

4

II.

Congress has determined that when one kills another during the commission of a bank robbery, the offender shall be sentenced to life imprisonment or death. See 18 U.S.C.A. § 2113(a) and (e) (West Supp. 1999). It has also declared that one who aids or abets a crime shall be punished as a principal. See 18 U.S.C.A. § 2 (West 1969). Sims challenges his sentence of life imprisonment without parole under these statutes on the ground that it violates the Eighth Amendment prohibition against cruel and unusual punishment because it is disproportionate to his crime. We disagree.

"[A] criminal sentence must be proportionate to the crime for which the defendant has been convicted." Solem v. Helm, 463 U.S. 277, 290 (1983). We have held that "outside the context of a capital sentence a proportionality review is necessary only with respect to sentences of life imprisonment without the possibility of parole." Beverati v. Smith, 120 F.3d 500, 504-05 (4th Cir. 1997).

In Solem, the Supreme Court announced three guiding factors to consider in determining whether a sentence is proportional to the crime: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem, 463 U.S. at 292.

In Harmelin v. Michigan, 501 U.S. 957 (1991), the Supreme Court revisited its holding in Solem, and a majority of justices either completely rejected the use of proportionality review for non-capital sentences, see id. at 965 (Scalia, J.), or believed that the second and third factor set forth in Solem need only be considered "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality," see id. at 1005 (Kennedy, J., concurring).**3**

_____

**3** We have previously suggested that Solem will continue to apply in the wake of Harmelin because a majority of justices did not expressly overrule Solem. See United States v. Kratsas, 45 F.3d 63, 67 (4th Cir. 1995). Judge Niemeyer wrote a separate opinion in Kratsas, however, in which

5

We have no difficulty concluding that this is not such a rare case of gross disproportionality. Sims received a life sentence for actively participating in the planning of a brutal, deadly bank robbery. Sims purchased two semiautomatic firearms for Bobbitt and Jones to use in the commission of the robbery. He also furnished cans of lighter fluid that the robbers intended to use in setting the building ablaze. There is no question that Sims played an integral role in the events that foreseeably resulted in the death of one individual and the wounding of three others. A sentence of life imprisonment is not grossly disproportionate to this violent crime.

Moreover, were we to consider the remaining Solem factors, we would be further assured that the sentence is not constitutionally infirm. A life sentence for this crime is consistent with other sentences found in the United States Sentencing Guidelines for crimes, such as robbery, in which death results. See, e.g., U.S. Sentencing Guidelines Manual (Nov. 1998), Appendix A (applying Guideline 2A1.1 for violations of 18 U.S.C. § 1111(a)). Thus, Sims's sentence satisfies the second Solem factor. As to the third factor, we have construed that factor to require a survey of sentences of similar crimes under the laws of states within this Circuit. See United States v. D'Anjou, 16 F.3d 604, 613 (4th Cir. 1994) (citing statutes from North Carolina, South Carolina, and Virginia that impose similarly severe sentences for narcotics crimes like the one at issue there). Here, the sentence is proportionate to ones imposed in states within this Circuit for similar crimes involving an accessory's role in violent crimes that result in death. See, e.g., Va. Code Ann. §§ 18.2-10, 18.2-18, 18.2-32 (Michie 1996 & Supp. 1999); Md. Ann. Code art. 27,§§ 38, 410, 412 (1996 & Supp. 1998); N.C. Gen. Stat. §§ 14-5.2, 14-17 (Supp. 1998).

_____

he took issue with this interpretation of the significance of Harmelin, noting that a majority of justices clearly narrowed the Solem test. See Kratsas, 45 F.3d at 69-70 (Niemeyer, J., concurring). Judge Niemeyer concluded that the majority's reliance on the original Solem test was improper and that because Harmelin was dispositive of the instant case, any indication by the majority that Solem survived Harmelin unscathed was dicta. See id. Because it is not essential to our holding today, we need not determine the proper precedential value to place on Kratsas's suggestion concerning the continuing validity of the original Solem test; we simply recognize this current uncertainty.

III.

Sims next contends that the district court erred in refusing to grant his motion for a new trial. We review the district court's decision not to grant a new trial for an abuse of discretion. See United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995).

In order to grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure based upon newly discovered evidence, the district court must determine that: (1) the evidence has been discovered since the trial; (2) the moving party acted with the appropriate amount of diligence; (3) the evidence is not "merely cumulative or impeaching;" (4) the evidence is "material to the issues involved;" and (5) the evidence demonstrates "that, on a new trial, . . . [it] would probably produce an acquittal." See id. "Without ruling out the possibility that a rare example might exist, we have never allowed a new trial unless the defendant can establish all five elements." Id.

In this case, the district court determined that the evidence Sims presented in support of his motion for a new trial was cumulative of that presented at trial and unlikely to produce an acquittal. Indeed, the statements proffered after trial were consistent with the testimony of three witnesses at trial and tended to suggest only that Sims was not present in the bank at the time of the robbery. To the extent that the newly discovered evidence proffered in support of his motion for reconsideration did not overlap with prior testimony presented at trial, the district court expressly noted that "in light of the substantial circumstantial evidence supporting [Sims's] prior knowledge of the robbery," this new evidence was not sufficient to produce an acquittal. (J.A. at 480.) The record clearly supports this ruling. In addition, we note that because the district court judge was the trier-of-fact in this case, he was "in a unique position to know whether [new] evidence would have affected the outcome." Government of the Virgin Islands v. Lima, 774 F.2d 1245, 1251 (3d Cir. 1985).

We find that the district court's decision not to grant a new trial in this case was sound, and not an abuse of discretion.

7

IV.

Having carefully considered Sims's arguments in his brief and at oral argument, we conclude that they lack merit. **4** The judgment of the district court is

<u>AFFIRMED</u>.

_____
**4** We have also considered the arguments Sims raises in his pro se supplemental brief and similarly conclude that they are without merit.

8