**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-4754**
_____


UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

RICHARD DUBLIN,

                              Defendant - Appellant.


_____

**No. 05-4766**
_____


UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

MARION MAYS, a/k/a Mojo,

                              Defendant - Appellant.


_____

**No. 05-4782**
_____


UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

DARRELL TODD MAYS,

                                    Defendant - Appellant.

---

Appeals from the United States District Court for the District of South Carolina, at Aiken.   Margaret B. Seymour, District Judge. (CR-03-834; CR-03-726)

---

Submitted:  July 5, 2006                   Decided:  July 13, 2006

---

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Langdon D. Long, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant Richard Dublin; Mark W. Hardee, Columbia, South Carolina, for Appellant Marion Mays; James P. Rogers, Columbia, South Carolina, for Appellant Darrell Todd Mays.  Reginald I. Lloyd, United States Attorney, Mark C. Moore, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Richard Dublin, Marion Mays, and Darrell Mays appeal the life sentences they received after pleading guilty to drug trafficking and conspiracy charges that involved the killing of James Barrow, a confidential informant working with law enforcement officers in Aiken, South Carolina. Finding no reversible error, we affirm.

I.

After Dublin was arrested on drug charges, police became suspicious that he might have information concerning the disappearance of Barrow. Dublin agreed to plead guilty to possession with intent to distribute 50 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1), and, as part of his plea agreement, agreed to cooperate with the government by providing truthful information about his drug activities and what he knew about Barrow's disappearance. Dublin understood that if he breached the plea agreement by failing to be truthful, the government could seek the maximum sentence of life in prison and use against him all the information he provided.

Following his plea, Dublin gave a series of interviews about the disappearance of Barrow, but, each time, his account changed. A consistent theme, however, was that Marion Mays and Darrell Mays were also involved. Although the government notified Dublin that he was in breach of his plea agreement, prosecutors wanted to call

3

him as a witness at the trial of the Mays brothers, who were charged with a variety of drug and firearms counts, including the drug-related murder of Barrow. However, because the government would make no promises to Dublin about the sentence it would recommend, Dublin refused to testify.

Shortly after their trial commenced in January 2005, the Mays brothers decided to plead guilty. The Mays brothers agreed to provide truthful information to the government and to submit to polygraph examinations. In turn, the government agreed not to use against them any incriminating information they provided, unless the information was already in the government's possession or they breached the plea agreement or committed perjury. The Mays brothers also acknowledged that if they did not pass their polygraphs examinations to the satisfaction of the government, the government's obligations would become void. The Mays brothers each acknowledged that their sentences would ultimately be determined by the district court.

The Mays brothers both admitted that they were not completely truthful in their initial interviews concerning the disappearance of Barrow. In fact, when agents picked up the brothers for their first interviews, they noticed Marion with a letter that he later admitted was intended to tell Darrell what to say. Additionally, Marion's polygraph examination showed inconclusive results concerning the truthfulness of his account about Barrow's body and

4

results indicating deception concerning an offer he allegedly made to a co-defendant to kill a government informant and the amount of drugs he gave that co-defendant.

Though the defendants' stories changed from interview to interview, grisly details of the Barrow murder finally emerged. The defendants eventually each admitted their role in Barrow's murder. According to their accounts, they ambushed Barrow, bound him with duct tape, placed him in the trunk of a car, and took him to the woods where they each shot him. Darrell Mays disposed of Barrow's truck, and Marion Mays returned to the scene with a chainsaw, where he dismembered Barrow's body. Marion Mays then removed Barrow's remains, poured acid on them, and burned them.

At sentencing, the district court found that Dublin and Marion Mays had breached their plea agreements by providing untruthful information. When the district court heard evidence concerning the sentencing issues, the government called Darrell Mays to testify. On the stand, Darrell Mays admitted his role in the murder, but, in what the government contends was an effort to avoid inculpating his brother, claimed to have memory problems. He stated that Dublin was behind the murder and that he did not believe his brother was involved. When confronted with his prior, inconsistent statements about the murder, he claimed that he lied when giving them. He

then admitted that he breached his agreement to provide truthful information.[1]

As to each defendant, the district court considered evidence of the drug transactions and the drug-related murder of Barrow. The district court sentenced each defendant to life in prison, and Marion Mays to thirty years each for three additional counts against him. The defendants appeal their sentences.

## II.

We review sentences for unreasonableness, though "reasonableness is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a)." United States v. Green, 436 F.3d 449, 456 (4th Cir.), cert. den., 164 L. Ed. 2d 828 (2006). We review de novo purely legal questions and we review findings of fact for clear error. See id. "An error of law or fact can render a sentence unreasonable." Id.

The defendants claim that the district court should not have sentenced them for murder when they had not been convicted by a jury of murder. We note first that this argument mischaracterizes what occurred in district court. Each defendant pleaded guilty to

---

[1]Darrell Mays had agreed both in his plea agreement and in a later proffer agreement to provide truthful information.

6

and was convicted of at least one drug-related charge that carried a possible sentence of life in prison. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. The defendants, therefore, were not "sentenced for murder," but were sentenced for violating our nation's drug laws. Their role in the drug-related killing of a government informant simply provided the district court greater discretion to sentence them to the maximum punishment authorized by law for these drug-related charges, namely, life in prison.

Turning to the reasonableness of the sentences, we note that, after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), a sentencing court is no longer bound by the range prescribed by the sentencing guidelines. See United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). However, in determining a sentence post-Booker, sentencing courts are still required to calculate and consider the applicable guideline range as well as the factors set forth in 18 U.S.C. § 3553(a), making all factual findings appropriate for that determination. See id. If the sentence imposed is within the properly calculated guideline range, it is presumptively reasonable. See Green, 436 F.3d at 456.

Under our now advisory sentencing guidelines, where a defendant is convicted of violating 21 U.S.C. §§ 841(a)(1) or 846 and a "victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States," the

7

sentencing court should look to the base offense level used for first degree murder, which is 43. See U.S. Sentencing Guidelines Manual §§ 2A1.1, 2D1.1(d)(1) (2004). Regardless of the defendant's criminal history category, the advisory sentencing guideline range for a base offense level of 43 is life in prison. See id. at Ch. 5, Pt. A.

Here, the district court had adequate evidence before it, including the admissions of each defendant, to conclude that the defendants were directly involved in the drug-related killing of Barrow, a confidential government informant. The district court was free to use the defendants' admissions of their roles in Barrow's killing, as there was adequate evidence to show that each defendant breached his agreement to provide truthful information. For example, there was sufficient evidence to conclude that Dublin provided a series of differing stories about his role in the murder and was notified by the government that he was in breach of his agreement; that Marion Mays was not forthcoming with all of the details concerning his role in the murder and failed a polygraph test; and that Darrell Mays was not completely truthful in his first interview and lied to investigators about his brother's role in the murder. As a result, the district court was permitted to use the defendants' admissions, weigh all the evidence, and apply

the murder cross reference to arrive at an advisory guideline range of life in prison for each defendant.[2]

Darrell Mays further argues that the district court failed to provide an adequate statement of reasons for his sentence under 18 U.S.C. § 3553(a). We note initially that, as described above, Darrell Mays' sentence fell within the advisory guideline range and was, therefore, presumed to be reasonable. See Green, 436 F.3d at 456. Furthermore, the district court was not required to discuss every § 3553(a) factor on the record. See United States v. Eura, 440 F.3d 625, 632 (4th Cir. 2006). Moreover, when the district court conducted its proportionality analysis under United States v. Kratsas, 45 F.3d 63, 66 (4th Cir. 1995), it explained that Darrell Mays' offense was "extremely grave," that he was involved in a conspiracy with one of South Carolina's major cocaine and crack suppliers, and that he played a role in the drug-related murder of a confidential informant. The district court concluded that life in prison was not disproportionate in comparison with other sentences under the guidelines, and that state statutes in our circuit disclose the existence of similarly severe sentencing for narcotics violations of this magnitude. J.A. 587. These findings under the Kratsas proportionality analysis touch on many of the

---

[2]For these reasons, we reject Darrell Mays' separate argument that the district court erred in concluding that he breached his plea agreement.

factors in § 3553(a) and support the reasonableness of Darrell Mays' sentence.

                                    III.

     For the foregoing reasons, we affirm the defendants' sentences.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.


                                                        <u>AFFIRMED</u>