**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 06-4064

———————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

NORWOOD WALLACE BARBER, JR., a/k/a Pee Wee
Barber,

                                        Defendant - Appellant.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg. Samuel G. Wilson, District
Judge. (5:05-cr-00015-sgw)

———————

Argued: November 28, 2006          Decided: April 2, 2007

———————

Before NIEMEYER and MICHAEL, Circuit Judges, and Joseph R.
GOODWIN, United States District Judge for the Southern District of
West Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Janipher Winkfield Robinson, ROBINSON & GREENE, Richmond,
Virginia, for Appellant. William Frederick Gould, OFFICE OF THE
UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.
**ON BRIEF:** John L. Brownlee, United States Attorney, Jean B.
Hudson, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Norwood "Pee Wee" Barber was convicted of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846, 841(a)(1). Because he had twice previously been convicted of drug felonies, he was sentenced to a mandatory minimum of life imprisonment.

On appeal, he contends that (1) the evidence was insufficient to convict him of drug conspiracy; (2) the district court erred in imposing the mandatory life sentence, rather than considering the statutory sentencing factors under 18 U.S.C. § 3553(a); and (3) his life sentence was cruel and unusual, in violation of the Eighth Amendment. Finding these arguments without merit, we affirm.

I

Tobasco Haliburton was a regional distributor for a drug ring headed by Norberto "Eddie" Reveria, working in the area of Harrisonburg, Virginia. Haliburton was responsible for bringing more than 11 kilograms of crack cocaine into the Harrisonburg area.

Barber first met Haliburton in September 2002, when Haliburton agreed to front Barber 500 grams of crack cocaine -- an arrangement that permitted Barber to pay Haliburton back from the proceeds of drug sales. According to Haliburton, he thereafter

-2-

supplied Barber with, conservatively, 200 grams of crack cocaine per week between October 2002 and June 2003. On multiple occasions during that period, Barber accepted the new package of crack even though he had not finished selling his previous allotment of crack.

On occasion during the conspiracy, Barber sent Jackie Raines to pick up crack from Haliburton, and Haliburton sent his cousin, Oran Wood, to pick up money from Barber. Haliburton's girlfriend, Shawnee Crawford, testified that she also received drug money from Barber via Jackie Raines. Haliburton maintained Barber's telephone number in his cell phone and a paper ledger reflecting his transactions with Barber. He was the principal witness testifying against Barber at trial.

Another conspirator, Shannon Bearfield, testified at trial that he supplied Barber with cocaine and crack cocaine on credit in amounts greater than 50 grams. On one occasion he sold Barber nine ounces (approximately 255 grams) of crack cocaine and cocaine.

Finally, two other individuals, Todd Campbell and Ernest Darcus, testified that Barber sold or fronted them crack. Campbell testified that Barber not only fronted him crack cocaine but also told him what price to charge.

Evidence was presented at trial that Barber's cell phone contained the phone numbers of both Campbell and Darcus, as well as those of Haliburton, Wood, and Bearfield.

II

Barber first challenges the sufficiency of the evidence to support the conspiracy conviction. We review the verdict deferentially, affirming if a rational jury, viewing the evidence in the light most favorable to the government, could have returned a guilty verdict. See United States v. Burgos, 94 F.3d 849, 854, 857 (4th Cir. 1996). The evidence must support each element of the offense, and in drug conspiracies, the evidence must support findings "(1) [that] an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) [that] the defendant knew of the conspiracy; and (3) [that] the defendant knowingly and voluntarily became a part of this conspiracy." Id. at 857.

The government mounted a case that included the testimony of two of Barber's drug suppliers, two go-betweens who ferried drugs and money between Barber's suppliers and Barber, and two of Barber's customers. Moreover, the testimony of each witness corroborated the testimony of the others, demonstrating that Barber was part of a hierarchical conspiracy to distribute crack cocaine. The fronting arrangements between Barber and Haliburton, Bearfield, Campbell, and Darcus, respectively, readily support the

-4-

government's conspiracy case. Fronting, an arrangement where one party gives the other drugs on credit, to be paid back once the drugs are sold, constitutes the heart of conspiratorial conduct, as the parties necessarily <u>agree</u> to distribute drugs. The financial arrangement cannot work until the drugs are sold. The fronting transaction also requires that each party be <u>aware</u> that drugs will be sold. Finally, the contractual character of the transaction proves that each party enters <u>voluntarily</u>. In this case, the quantities involved in the various fronting transactions were consistently over 50 grams each. In short, the evidence supporting the jury's verdict was strong.

## III

Barber next contends that his life sentence was entered illegally because the district court imposed the sentence without considering and applying the factors listed in 18 U.S.C. § 3553(a). This argument fails to account for the fact that the life sentence was mandated by statute.

Under 21 U.S.C. § 841(b)(1)(A), "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." Because Barber had three prior convictions for drug felonies, the district court followed the command of these statutes in imposing a life sentence.

Barber's argument that the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), required the district judge to consult the sentencing guidelines and sentencing factors under 18 U.S.C. § 3553(a) is specious. First, the Sentencing Guidelines are irrelevant when the statutory minimum sentence is life. The Guidelines specify that when the statutory minimum is greater than or equal to the guidelines maximum, the sentence imposed must be the statutory sentence. See U.S.S.G. § 5G1.1(b) (2004). Moreover, nothing in Booker authorizes a judge to give a discretionary sentence below the statutory minimum. See United States v. Robinson, 404 F.3d 850, 862 (4th Cir. 2005) ("Booker did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence . . . a district court has no discretion to impose a sentence outside of the statutory range established by Congress").

Barber's argument is without merit.

IV

Finally, Barber contends that his life sentence is so disproportionate to his crimes as to constitute "cruel and unusual" punishment under the Eighth Amendment.

Barber waived this argument by failing to present it to the district judge. See Fed. R. Crim. P. 51(b), 52(b). But even if it had been preserved, it would fare no better. Considering the three-factor test articulated in Solem v. Helm, 463 U.S. 277, 290-

91 (1983) ("[1] the gravity of the offense and the harshness of the penalty; [2] the sentences imposed on other criminals in the same jurisdiction, and [3] the sentences imposed for commission of the same crime in other jurisdictions"), the life sentence is unquestionably legal.

The gravity of the offense in this case was severe, as Barber was conservatively responsible for distributing at least 1.5 kilograms of crack cocaine during the course of the conspiracy, amounting to 3,000 and 15,000 doses for use. U.S. Sentencing Comm'n, Cocaine and Federal Sentencing Policy 17 (2002). And the social damage caused by crack cocaine has been amply documented. See United States v. D'Anjou, 16 F.3d 604, 613 (4th Cir. 1994) ("Drug use, and the use of crack in particular, has become a pervasive, destructive force in American society").

Addressing the other Solem factors, we need merely follow predecessor courts to consider comparable sentences for comparable crimes. This court and courts around the country have upheld the federal "three strikes" rule for drug offenders. See United States v. Kratsas, 45 F.3d 63, 69 (4th Cir. 1995) (upholding life sentence for third offense of distributing 18 kilograms of powder cocaine); United States v. Hill, 30 F.3d 48 (6th Cir. 1994) (upholding life sentence for third offense of possession with intent to distribute 178 grams of crack cocaine); United States v. Angulo-Lopez, 7 F.3d 1506 (10th Cir. 1993) (same, 48 kilograms of

crack cocaine); <u>United States v. Johnson</u>, 944 F.2d 396 (8th Cir. 1991) (same, at least 87 grams of crack cocaine).  The Supreme Court has upheld lengthy sentences under a state drug statute, <u>see</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991) (life imprisonment for possession of 672 grams of cocaine), and under a state anti-recidivism statute, <u>see</u> <u>Ewing v. California</u>, 538 U.S. 11 (2003) (life imprisonment under California "three strikes" law, where third strike was the theft of $1200 in golf clubs).  In upholding these sentences, the courts have concluded that harsh sentences may be applied to both drug offenders and recidivists.  Barber's case appears unexceptional in light of the sentences that have already been upheld against Eighth Amendment challenges.

Finally, we note that Barber earned no wages in 17 of the 21 years he has been of working age, and during the remaining 4 years, he earned roughly $6000 in the aggregate.  As one who subsisted nearly exclusively through drug dealing, Barber is among those on whom the government can place the "onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law. . . ."  <u>Rummell v. Estelle</u>, 445 U.S. 263, 284 (1980).

The judgment of the district court is

<u>AFFIRMED</u>.