UNITED STATES of America, Appellee,

v.

John REED, Defendant-Appellant.

No. 655, Docket 85–1245.

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1986.

Decided May 5, 1986.

Henriette D. Hoffman, The Legal Aid Society, New York City, for defendant-appellant.

Louis M. Fischer, Dept. of Justice, Washington, D.C. (Stanley A. Twardy, Jr., U.S. Atty., and William I. Shockley, Ass't U.S. Atty., Bridgeport, Conn., on brief), for appellee.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

John Reed appeals from a judgment of the United States District Court for the District of Connecticut convicting appellant after a jury trial before Judge Eginton on one count of wire fraud, 18 U.S.C. § 1343, and one count of conspiracy to export articles on the United States Munitions List without a license from the Department of State and with the use of false export documents, 18 U.S.C. § 371, 22 U.S.C. § 2778(b)(2) and (c). We affirm.

Appellant's conviction stems from his role as a middleman who brought together prospective buyers and a seller in a scheme to export 400,000 chemical warfare protective suits to Iran. Because the suits are classified as defense articles on the United States Munitions List, *see* 22 C.F.R. § 121.-1, their export is permitted only with prior approval from the Department of State. Since 1980, the United States has refused to grant export licenses for the shipment of defense articles to Iran. *See* Arms Export and Import Control Act, 22 U.S.C. § 2751 *et seq.;* International Traffic in Arms Regulations, 22 C.F.R. §§ 121.-30. Appellant and his coconspirators planned to procure a falsified "end use certificate" listing Italy as the final destination for the suits, and then to transfer the suits from Italy to Iran. The plan was frustrated, however, when the prospective seller of the suits became suspicious of the purchasers' requirement that the suits not be made by persons of the Jewish faith. Deducing from this that Italy might not be the actual destination for the suits, the seller alerted the United States Customs Service. A Customs Agent, posing as the seller's export manager, insinuated himself into the scheme and gathered the evidence that formed the basis for Reed's indictment and subsequent conviction.

Appellant contended at trial that he did not know the suits ultimately were destined for Iran. Two witnesses testified, however, that they had told Reed while negotiations for the sale were in progress that the deal was not legitimate. In addition, the Government introduced evidence that appellant had made several prior offers to procure various defense items in violation of import-export laws, both to the participants in the Iranian deal and to others. In his charge to the jury, the trial judge gave a conscious avoidance instruction[1] as well as an instruction on the specific intent element of the crime of conspiracy.

Prior to charging the jury, the trial judge proposed to counsel for both sides that the single alternate juror be permitted to deliberate and participate in the verdict since he had "stuck through" the six-week proceeding. Both sides agreed to the judge's proposal, under which all thirteen jurors would have to return a unanimous verdict. After three days of deliberation, the thirteen-man

---

1. The trial judge instructed the jury on conscious avoidance as follows:

   Nonetheless, to establish the essential element of guilty knowledge, it is not necessary for the Government to prove to a certainty that the defendant knew that the suits were headed for an illegal destination. It is enough that the Government proves beyond a reasonable doubt that the defendant was aware of a high probability of an illegal destination. If the Government proves this awareness and shows the defendant deliberately refused to learn the actual facts, then the Government has proven the element of guilty knowledge.

jury returned a unanimous verdict of guilty on both counts.

Appellant's principal contention on appeal is that, in submitting his case to a thirteen-man jury, the district court violated Fed.R.Crim.P. 24(c), which requires a trial court to discharge unneeded alternate jurors prior to the time the jury commences its deliberations. Appellant contends that Rule 24 gave him the absolute right to be tried by a jury of no more than twelve and that this right could not be waived. We disagree.

■ In support of his contention, appellant cites decisions premised on the former widespread assumption that the Constitution required trial by a jury of twelve. *See, e.g., United States v. Hayutin*, 398 F.2d 944, 950 (2d Cir.), *cert. denied*, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968). However, in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court held that "the fact that the jury at common law was composed of precisely 12 is a historical accident" and refused to interpret the Sixth Amendment in such a manner as to dictate the precise number that can constitute a jury. *Id.* at 102–03, 90 S.Ct. at 1907. It follows that a violation of Rule 24(c) does not require reversal *per se* absent a showing of prejudice. *United States v. Jones*, 763 F.2d 518, 523 (2d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); *United States v. Hillard*, 701 F.2d 1052, 1058 (2d Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983). There has been no such showing in the instant case. Moreover, we agree with the observation of the Supreme Court of Washington that "[i]t would be difficult to see how [appellant] would be prejudiced by the use of a jury of thirteen instead of twelve." *State v. Cuzick*, 85 Wash.2d 146, 148, 530 P.2d 288 (1975).

We are strengthened in this belief by several comments in United States Supreme Court opinions that followed *Williams v. Florida, supra*. In *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972), in which the Court upheld the defendant's conviction of robbery by a nine-man majority vote of the jury, Justice White said:

Of course, the State's proof could perhaps be regarded as more certain if it had convinced all 12 jurors instead of only nine; it would have been even more compelling if it had been required to convince and had, in fact, convinced 24 or 36 jurors.

In *Ballew v. Georgia*, 435 U.S. 223, 234, 98 S.Ct. 1029, 1036, 55 L.Ed.2d 234 (1978) Justice Blackmun said:

Statistical studies suggest that the risk of convicting an innocent person ... rises as the size of the jury diminishes.

Justice Brennan, writing in *Brown v. Louisiana*, 447 U.S. 323, 332, 100 S.Ct. 2214, 2221, 65 L.Ed.2d 159 (1980), said that "a decline in jury size leads to less accurate factfinding and a greater risk of convicting an innocent person."

Although the risk of conviction by a twelve-man jury might not be appreciably greater than by a thirteen-man jury, we are satisfied that there is no likelihood whatever that a thirteen-man jury would convict more readily than would a twelve-man jury. Apparently, appellant and his trial counsel felt the same way. When the district judge suggested the possibility of using a thirteen-man jury, he directed defense counsel to discuss the matter with his client; the court stated that the procedure had to be agreed upon by both the Government and the defense or else he would not allow it. Thereafter, when defense counsel informed the judge that an agreement had been reached, the judge told the jury that the parties and counsel had consented to the alternate sitting as a juror. He instructed the jury that "your verdict of all 13 must be unanimous". When the jury returned to report its verdict, the court inquired whether "the jury of 13 had reached a unanimous verdict".

Appellant never has contended, either in the district court or in this Court, that he personally did not consent to the thirteen-man panel. The sole contention of his ap-

pellate counsel is that "Reed did not agree on the record to a 13-person jury." This contention must be viewed in the light of the generally accepted proposition that the lawyer is the agent of his client and his statements and representations in open court may be accepted by the court absent a showing of bad faith or gross negligence. *See United States v. McKeon,* 738 F.2d 26, 30 (2d Cir.1984); *Brown v. Wainwright,* 665 F.2d 607, 612 (5th Cir.1982) (en banc). There are numerous cases which hold that personal colloquy need not take place between the court and the defendant before there can be an effective waiver of a twelve-man jury. *See, e.g., United States v. Vega,* 447 F.2d 698 (2d Cir.1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972); *United States v. Spiegel,* 604 F.2d 961, 965 (5th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); *United States v. Roby,* 592 F.2d 406, 408 (8th Cir.) (per curiam), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2888, 61 L.Ed.2d 314 (1979); *Williams v. United States,* 332 F.2d 36, 39 (7th Cir.1964), *cert. denied,* 379 U.S. 976, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965); *Horne v. United States,* 264 F.2d 40 (5th Cir.), *cert. denied,* 360 U.S. 934, 79 S.Ct. 1460, 3 L.Ed.2d 1549 (1959). Although several Circuits require that the defendant's personal assent must appear on the record, *see United States v. Taylor,* 498 F.2d 390 (6th Cir.1974); *United States v. Guerrero-Peralta,* 446 F.2d 876 (9th Cir.1971), it is interesting to note that in 1983 Congress amended Fed.R.Crim.P. 23(b) to provide that, despite the absence of any stipulation by the parties, "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors."

■ Because the waiver herein was neither prejudicial nor of constitutional magnitude and was made in the presence of the defendant in open court, we hold that, if the failure to record appellant's personal assent was error, it was harmless beyond a reasonable doubt. *See United States v. Roby, supra,* 592 F.2d at 408.

This holding should not be construed, however, as an endorsement of the stipulated use of thirteen-man juries. As we stated in *United States v. Viserto,* 596 F.2d 531, 540 (2d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979), it is desirable that there be consistency in the method of jury selection throughout the federal court system. The federal rules of criminal procedure establish juries of twelve as the national norm, with certain limited exceptions. We view with disfavor local departures from that norm made on an ad hoc basis and by resort to stipulations, and the procedure followed here should not be repeated.

■ Relying on this Court's decision in *United States v. Mankani,* 738 F.2d 538 (2d Cir.1984), appellant also contends that the district court erred in its charge on conscious avoidance. This reliance is misplaced. In *Mankani,* the Court rejected the Government's argument that a defendant could become a member of a conspiracy by consciously avoiding participation in it. Where, as here, the defendant has become a member of a joint undertaking, he cannot avoid responsibility for its unlawful acts by closing his eyes to what is readily apparent. The evidence presented at trial was sufficient to warrant a conscious avoidance charge concerning appellant's knowledge that the suits' ultimate destination was Iran. *See United States v. Mohabir,* 624 F.2d 1140, 1154 (2d Cir.1980).

■ Appellant's final argument is that the trial judge erred in admitting evidence that appellant offered to procure other defense items in violation of export restrictions. This evidence was relevant to appellant's knowledge of import-export restrictions on defense items and his willingness to violate those restrictions, and the trial judge twice cautioned the jury about the limited purpose for which the evidence was admitted. A trial judge's ruling that the probative value of similar acts evidence outweighs the risk of unfair prejudice to the defendant will not be reversed absent a clear showing of abuse of discretion.

*United States v. Martino,* 759 F.2d 998, 1005 (2d Cir.1985). There was no such abuse in the instant case.

The judgment of the district court is affirmed.