OPINION OF THE COURT
Philip E. Lagaña, J.
Defendant moves to preclude his retrial on the ground that *309 his constitutional right not to be placed twice in jeopardy would be violated.
Defendant is charged with the crimes of murder in the second degree, assault in the second degree and criminal possession of a weapon in the second degree.
On November 10, 1987, the jury selection process commenced. After 12 jurors were selected, there remained only two prospective jurors. The prosecutor then used one of his peremptory challenges to remove the first potential alternate (hereinafter called Alternate No. 1). Defendant then stated his displeasure with the second prospective alternate juror (hereinafter called Alternate No. 2). The court then suggested to both parties that rather than calling up an entirely new panel and commencing an entirely new voir dire, each accept the unfavorable alternate jurors. This was agreed to and Alternate No. 1 and Alternate No. 2 were then seated. The jurors were then sworn and trial commenced.
On November 19, the court charged the jury. The next day, Alternate No. 1 asked to be excused because it was Friday and he desired to attend religious services that evening. Simultaneously with this request, the court received a note from the jury stating that they were hopelessly deadlocked. After much discussion during which it was pointed out that the alternates were originally not acceptable to either side, the court, over defendant’s objection, released Alternates No. 1 and No. 2. The court further directed the jury to continue to deliberate. At approximately 5:40 p.m. on November 20, 1987, the jury again stated that they were "far apart and it does not seem that we can ever come to a conclusion”. The court directed the jury to continue deliberations and eventually sequestered them for the evening.
On November 21, 1987, one of the jurors became ill and was unable to continue deliberating. The court asked defense counsel for a motion and defense counsel moved for mistrial. The court granted the mistrial motion.
It is now claimed that because the court illegally discharged Alternate No. 1, retrial is barred. It is argued that had Alternate No. 1 been available on November 21, 1987, he could have been substituted for the ill juror and thus a mistrial would not have been necessary. Defendant argues that his double jeopardy rights would now be violated by retrial because the mistrial was not based upon manifest necessity.
*310 For the purposes of this decision, the court will assume that the discharge of Alternate No. 1 was, in fact, illegal.
Ordinarily, when a defendant moves for mistrial, a waiver of tlie double jeopardy rights occurs and retrial is not barred (United States v Scott, 437 US 82, 93; People v Catten, 69 NY2d 547, 554; People v Ferguson, 67 NY2d 383, 388-389). This is true "even if the defendant’s motion is necessitated by * * * judicial error” (United States v Jorn, 400 US 470, 485). There is, however, one exception to the rule. Where a governmental agent’s conduct intentionally " 'goad[s]’ ” the defendant into moving for a mistrial, or where the governmental agent’s act is done in bad faith with intent that defendant move for mistrial, then retrial may be barred (Oregon v Kennedy, 456 US 667, 676; Matter of Mortillaro v Posner, 147 AD2d 701, 702; People v Holmes, 128 AD2d 727, lv denied 70 NY2d 648; People v Sorenson, 118 AD2d 607, 608, lv denied 67 NY2d 951, and 67 NY2d 1057). This principle is equally applicable whether the governmental agent is a prosecutor or a Judge/ Justice (United States v Toteo, 377 US 463, 468, n 3; United States v Dinitz, 424 US 600, 611; United States v Jorn, 400 US 470, 485, supra).
In this case at the time of the alleged "illegal discharge” the court could not have contemplated a mistrial. Indeed, jury deliberations continued in spite of the court having received a note that the jury was unable to reach a verdict. This indicates that the court’s alleged illegal actions were not intended to "goad” defendant into a mistrial or that they were done in bad faith. There is no indication that the court had an improper motive for discharging Alternate No. 1.
Defendant’s motion for mistrial bars any claim of double jeopardy.
Even assuming the court’s request for "a motion” constituted improper coercion causing defense counsel’s mistrial motion, and the granting thereof was a declaration of a mistrial without defendant’s voluntary consent, the result would not be different.
CPL 270.30 authorizes the court to select up to four alternate jurors after having chosen 12 jurors. It does not require the selection of any alternate juror but is permissive within the discretion of the court (People v Ashley, 145 AD2d 782, 783). Had the court not selected any alternate jurors and mistrial was necessitated by the illness of a deliberating juror, no double jeopardy rights would have been violated (Boisen v *311 United States, 181 F Supp 349; State v Roberson, 225 La 74, 72 So 2d 265; State v Heathcoat, 119 NJL 33, 194 A 252; see also, Annotation, 84 ALR2d 1288, 1300, §6 [b]). Even where the court has an alternate available but chooses not to substitute the alternate for an ill juror, thereby necessitating a mistrial, defendant’s double jeopardy rights would not be violated (Hameed v Jones, 750 F2d 154, cert denied 471 US 1136).
Therefore, nothing in the Double Jeopardy Clause mandates the existence of alternate jurors or, if such be available, the substitution of an incapacitated juror. Indeed, it was not until Laws of 1933 (ch 588), effective September 1, 1933, that substitution of alternate jurors was permissible in New York State. Thus, at the time that Federal and State constitutional provisions against double jeopardy were enacted, substitution of alternates for deliberating jurors did not exist.
Further, manifest necessity existed at the time of the declaration of the mistrial. Substitution of an alternate juror for a deliberating juror is a questionable practice.
By Laws of 1952 (ch 670), our Legislature for the first time permitted substitution of an alternate during deliberation where a defendant consents. In People v Ryan (19 NY2d 100), the court held that the statute permitting oral consent to the substitution of an alternate juror for a deliberating juror was unconstitutional. The court found that when substitution occurs during deliberation, there are 13 persons who would be participating in deliberations, i.e., the 12 original jurors and the substituted alternate juror. The court also found that deliberations are an integral part of the jury verdict and, thus, the jury verdict was the consensus of 13 jurors and not 12. As a policy matter, the court held that it would be difficult, if not impossible, for the original 11 jurors not to consider the argument of the ill juror. The substituted alternate would then not have the benefit of the incapacitated juror’s argument. Thus, the court found that the jury verdict would have consisted of different thoughts by the ultimate deciding jury. This the court found to be violative of the New York State constitutional right to trial by only 12 jurors (see also, United States v Lamb, 529 F2d 1153; State v Wideman, 739 P2d 931 [Haw]; State v Lehman, 108 Wis 2d 291, 321 NW2d 212; People v Burnette, 775 P2d 583 [Colo]; cf., United States v Guevara, 823 F2d 446; People v Collins, 17 Cal 3d 687, 131 Cal Rptr 782, 552 P2d 742, cert denied 492 US 1077; State v Miller, 76 NJ 392, 388 A2d 218; Smith v State, 241 Ind 311, 170 NE2d 794; Commonwealth v Kalinowski, 12 Mass App *312 827, 429 NE2d 368, review denied 385 Mass 1102, 440 NE2d 1174; United States v Phillips, 664 F2d 971, cert denied sub nom. Meinster v United States, 457 US 1136; United States v Hillard, 701 F2d 1052, cert denied 461 US 958).
In Ryan (19 NY2d 100, supra), the prosecutor also argued that since defendant consented to the substitution, he had waived his rights to a jury of 12. Without addressing the issue as to the applicability of the constitutional provision regarding jury waiver, the court held that since the waiver was oral and not in writing, it could not, in any event, constitute a waiver under the New York State Constitution (see, NY Const, art I, §2).
Article I, § 2 of the NY Constitution permits the waiver of a jury when done in open court and consented to by the defendant personally and in writing. There appears to be two possible interpretations of this provision. One would be that the defendant has a choice, either jury trial or Judge trial and nothing else. The history of this provision indicates that this would be a proper interpretation. Indeed, recently the court held that a defendant could not consent to a jury trial by 10 jurors (People v Lester, 149 AD2d 975). It appears that the underlying assumption of this case is that the defendant could choose either a 12-person jury or a Judge trial, but nothing in between. It would seem logical, under this interpretation, that a defendant could not consent to a 13-person jury. (The holding of People v Ryan [19 NY2d 100, supra] being that by substituting an alternate during deliberation, there exists a 13-person jury.)
The second interpretation would be that a defendant is able to waive a defect in the jury, including a defect in the number of jurors. The court need not resolve this issue in this case.
Juror substitution in the midst of jury deliberations presents substantial fair trial and due process problems and, even where authorized, should be used sparingly. As recently stated in People v Burnette (775 P2d 583, 588, supra): "Where an alternative juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant’s guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his views and to persuade others. See United States v. Phillips, 664 F.2d 971, 995 (5th Cir. 1981), cert, denied, 457 U.S. 1136, 102 S. Ct. 2965, 73 L. Ed. 2d 1354 (1982); United States v. Lamb, 529 F.2d 1153, 1156 (9th Cir. 1975). Moreover, the new *313 juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision. See People v. Ryan, 19 N.Y.2d 100, 278 N.Y.S.2d 199, 202, 224 N.E.2d 710, 712 (1966). Nor will the new juror have the benefit of the unavailable juror’s views. Id. Finally, a lone juror who cannot in good conscience vote for conviction might be under a great pressure to feign illness in order to place the burden of decision on an alternate. Lamb, 529 F.2d at 1156. For reasons such as these, the practice of replacing a juror with an alternate at such a sensitive stage of the proceedings has been disapproved in the ABA Standards for Criminal Justice § 15-2.7 (1986). The commentary to Standard 15-2.7 explains that the approach of allowing alternate jurors to replace regular jurors during deliberations was rejected in the standard because 'it is not desirable to allow a juror who is unfamiliar with the prior deliberations to suddenly join the group and participate in the voting without the benefit of earlier group discussion.’ See also 2 C. Wright, Federal Practice and Procedure: Criminal 2d § 388, at 393 (2d ed. 1982) (criticizing the procedure of substituting an alternate for a regular juror during deliberations).”
The Federal rules provide that after charging the jury, the alternates must be discharged (Fed Rules Grim Pro, rule 24). In 1983, the Federal Advisory Committee of the Rules rejected the concept of substituting alternate jurors in the midst of deliberations. It chose instead to adopt a rule permitting jury verdict by 11 persons without defendant’s consent in order to solve the problem created by the incapacity of a deliberating juror. In rejecting the substitution option, the Committee stated (Notes on Advisory Comm on Rules 18 USCA, rule 23, 1989 Pocket Part, at 25):
“In rejecting the substitution-of-juror alternative, the Committee’s judgment is in accord with that of most commentators and many courts.
" 'There have been proposals that the rule should be amended to permit an alternate to be substituted if a regular juror becomes unable to perform his duties after the case has been submitted to the jury. An early draft of the original Criminal Rules had contained such a provision, but it was withdrawn when the Supreme Court itself indicated to the Advisory Committee on Criminal Rules doubts as to the desirability and constitutionality of such a procedure. These doubts are as forceful now as they were a quarter century ago. *314 To permit substitution of an alternate after deliberations have begun would require either that the alternate participate though he had missed part of the jury discussion, or that he sit in with the jury in every cases [sic] on the chance he might be needed. Either course is subject to practical difficulty, and to strong constitutional objection.
"Wright, Federal Practice and Procedure § 388 (1969). See also Moore, Federal Practice par. 24.05 (2d ed Cipes 1980) ('The inherent coercive effect upon an alternate who joins a jury leaning heavily toward a guilty verdict may result in the alternate reaching a premature guilty verdict’); 3 ABA Standards for Criminal Justice § 15-2.7, commentary (2d ed. 1980) ('it is not desirable to allow a juror who is unfamiliar with the prior deliberations to suddenly join the group and participate in the voting without the benefit of earlier group discussion’); United States v. Lamb, 529 F.2d 1153 (9th Cir. 1975); People v. Ryan, 19 N.Y.2d 100, 224 N.E.2d 710 (1966). Compare People v. Collins, 17 Cal. 3d 687, 131 Cal. Rptr. 782, 522 P.2d 742 (1976); Johnson v. State, 267 Ind. 256, 396 N.E.2d 623 (1977).
"The central difficulty with substitution, whether viewed only as a practical problem or a question of constitutional dimensions (procedural due process under the Fifth Amendment or jury trial under the Sixth Amendment), is that there does not appear to be any way to nullify the impact of what has occurred without the participation of the new juror. Even were it required that the jury 'review’ with the new juror their prior deliberations or that the jury upon substitution start deliberations anew, it still seems likely that the continuing jurors would be influenced by the earlier deliberations and that the new juror would be somewhat intimidated by the others by virtue of being a newcomer to the deliberations.” (See also, United States v Gambino, 598 F Supp 646, 660, affd 788 F2d 938, cert denied 479 US 825.)
In the case at bar, each of the alternate jurors had previously been rejected by one of the parties: Alternate No. 1 was rejected by the People and Alternate No. 2 had been rejected by defense counsel. The jury had, on two separate occasions, sent notes that they were hopelessly deadlocked. The notes indicated that the positions of the jurors were firm. The trial was a relatively short one, testimony lasting less than one week. At the time that the deliberating juror became ill, the jury had already been deliberating almost two days without a verdict. Most of this two-day period was spent deliberating rather than having readbacks or recharge. Under the totality *315 of the circumstances, manifest necessity existed even if the alternate jurors were present at the time the mistrial was declared (Hameed v Jones, 750 F2d 154, supra).
The court further notes that defense counsel’s motion papers are devoid of any affidavit by defendant personally that he would have waived his rights in writing to a jury of 12 (as opposed to 13) as required by statute and the New York State Constitution.
The motion is denied.