PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                   No. 00-4687

SPENCER T. MYERS,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(CR-00-62-3)

Argued: December 6, 2001

Decided: February 7, 2002

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Judge Traxler joined.

## COUNSEL

**ARGUED:** Garrett Michael Heenan, ARNOLD & PORTER, Wash-
ington, D.C., for Appellant. John Castle Parr, Assistant United States
Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:**
Charles T. Miller, United States Attorney, John K. Cecil, Third-Year
Law Student, William Crichton, VI, Third-Year Law Student,
Charleston, West Virginia, for Appellee.

**OPINION**

WILKINSON, Chief Judge:

Spencer T. Myers was charged in a five-count federal indictment with various drug and weapons offenses, and the jury convicted him on all counts. For the reasons that follow, we affirm the judgment.

I.

On February 1, 2000, Spencer Myers was at his mother's home in Huntington, West Virginia. Robert Shilot, a nursing student with a drug problem, went there to purchase crack cocaine from Myers. After making the purchase, Shilot, Myers, and Myers' girlfriend, Kelly Ward, smoked some of the crack together.

Approximately an hour later, Myers accused Shilot of stealing some of his crack, and demanded that Shilot pay him for it. When Shilot refused, Myers retrieved a gun from his car, re-entered the house, and held Shilot at gunpoint. In an effort to find the crack, Myers made Shilot strip. Shilot again denied taking the drugs and refused to give Myers any money. Sensing he was in danger, Shilot called 911 from his cell phone. Moments later, Myers shot Shilot in the head and killed him. Myers dragged the body around the house, ultimately leaving it in the kitchen and fleeing the scene. Ward eventually called the police, and Myers was arrested a few miles from his mother's home. Myers was then charged by the state with murder. While incarcerated, Myers wrote Ward letters suggesting she should testify to a false version of events before the grand jury.

Myers was later charged in a five-count federal indictment with drug and weapons offenses stemming from the incident. After a two-day trial, the jury convicted him on all counts charged in the indictment: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (e)(1); (2) distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); (3) possession and use of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); (4) knowing possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and

924(a)(1); and (5) corruptly persuading another to hinder an investigation, in violation of 18 U.S.C. § 1512(b)(3).

Myers filed a post-trial motion for judgment of acquittal or, in the alternative, a new trial. He argued that the government's evidence at trial was insufficient to sustain the jury's verdict, and that the district court made various evidentiary errors. The court disagreed, finding that the evidence of Myers' guilt was overwhelming. The court further concluded that not only was the evidence regarding the shooting of Robert Shilot relevant, but its probative value was also not substantially outweighed by the danger of unfair prejudice. The court thus denied Myers' motion.

Though Myers challenged the foregoing actions by the district court, he did not object to the court's decision to allow an alternate juror to remain in the jury room to deliberate and vote as a thirteenth juror. When the court submitted the case to the jury, it forgot to discharge the alternate juror. The court soon realized its mistake, and after deliberations had begun, it summoned all parties, including Myers, to the courtroom to inform them that it had inadvertently neglected to discharge the alternate. The court said that the two options under the circumstances were either to allow all thirteen jurors to deliberate and require a unanimous verdict of thirteen for a conviction, or bring the jury out and discharge the alternate in the middle of deliberations. Myers' counsel expressed a preference for the former option while Myers was seated next to him, though the court did not consult with Myers himself and obtain his consent. The court agreed that proceeding with a jury of thirteen was the best course. The jury was thus allowed to continue its deliberations, and it returned guilty verdicts on all counts. Myers makes numerous claims on appeal. We address each in turn.

II.

Myers first argues that the inclusion of a thirteenth juror in jury deliberations constitutes a glaring procedural error that warrants an immediate reversal and remand. According to Myers, Federal Rule of Criminal Procedure 24(c) required the district court either to dismiss the alternate juror or to retain and insulate him, and Rule 23(b) left the court with no discretion to allow more than twelve jurors to delib-

erate and render a verdict. In addition, Myers submits that controlling decisions of this circuit hold that the presence of an alternate in the jury room during deliberations constitutes plain error and mandates reversal. *See United States v. Chatman*, 584 F.2d 1358, 1361 (4th Cir. 1978); *United States v. Virginia Erection Corp.*, 335 F.2d 868, 870-73 (4th Cir. 1964); *see also Kuykendall v. S. Railway Co.*, 652 F.2d 391, 393 (4th Cir. 1981) ("We have adopted a per se rule of reversal in criminal cases where alternate jurors were allowed to retire with the jury."). Moreover, Myers contends that while our decisions have recognized that a defendant may knowingly waive his right to a twelve-member jury, those cases involved juries consisting of less than twelve members, a situation expressly countenanced in Rule 23(b). *See, e.g.*, *United States v. Fisher*, 912 F.2d 728, 731-32 (4th Cir. 1990). Finally, Myers maintains that this court's Rule 23(b) waiver cases require a knowing waiver from the defendant himself, not merely from his counsel. *See Fisher*, 912 F.2d at 732; *United States v. Evans*, 635 F.2d 1124, 1127 (4th Cir. 1980).

The basic problem with Myers' analysis is that all of the cases he relies upon were decided before the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993). In *Olano*, a case involving the presence of alternates in the jury room, the Court observed that Rule 52(b)'s plain error standard of review, "which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court." 507 U.S. at 731. *Olano* governs here because Myers raises his thirteenth juror claim for the first time on appeal.

Emphasizing that "the authority created by Rule 52(b) is circumscribed," the Supreme Court in *Olano* held that in order for a court of appeals to have the authority to correct forfeited objections: (1) there must be an "error"; (2) the error must be "plain"; (3) the error must "affect[ ] substantial rights"; and (4) the error must "seriously affect the fairness, integrity or public reputation of judicial proceedings." 507 U.S. at 732 (internal quotations omitted). Thus, Myers overlooks a critical point: *Olano* makes quite clear that the rights set forth in *Chatman* and *Virginia Erection Corp.* are subject to plain error analysis. And even assuming that Myers can meet some of *Olano*'s requirements, he cannot satisfy all of them.

There is no doubt that the presence of alternate jurors during jury deliberations is a deviation from Rule 24(c). *See Olano*, 507 U.S. at 737. And we may assume without deciding that the consent of Myers' counsel in Myers' presence to the alternate's participation in deliberations does not constitute a valid waiver. This assumption removes any question about the existence of error. *See id.* at 732-33. Further assuming that the error was plain, Myers still cannot meet the requirements of the third and fourth prongs of *Olano*.

To begin with, Myers has not made a specific showing of prejudice, and "[t]he presence of alternate jurors during jury deliberations is not the kind of error that 'affect[s] substantial rights' independent of its prejudicial impact." *Olano*, 507 U.S. at 737. Myers must make this showing because under Rule 52(b), "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* at 734. It is difficult to see how Myers could possibly prove that he was prejudiced by the participation of a thirteenth juror in jury deliberations when his attorney not only issued no objection to this manner of proceeding, but also affirmatively consented for strategic purposes, stating that "[f]rom the defendant's viewpoint, we would propose that all 13 jurors deliberate, Your Honor." And he did so for good reason: All other things being equal, it cannot possibly be less difficult for the government to get thirteen jurors to agree that a defendant is guilty beyond a reasonable doubt than it is to get twelve to so agree. *See United States v. Reed*, 790 F.2d 208, 210 (2d Cir. 1986) ("[W]e are satisfied that there is no likelihood whatever that a thirteen-man jury would convict more readily than would a twelve-man jury.").

Moreover, we have no reason to believe that all other things were not equal in this case. "We presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Olano*, 507 U.S. at 740 (internal quotation omitted). Myers has not offered us any proof that the alternate juror was in any way biased or prejudiced against him. Rather, there is every indication that thirteen unbiased jurors found Myers guilty on all counts.

It is true, as Myers argues, that *Olano* was a case in which the alternate jurors were specifically instructed that they could sit in on delib-

erations but must not participate. *Id.* at 729. Under these circumstances, the Supreme Court held that the presence of the alternates in the jury room did not "affect[ ] substantial rights" of the defendants. *Id.* at 739-41. But while the Court in *Olano* found no prejudice in the absence of evidence that the alternates either participated or chilled deliberations by the twelve regular jurors, it did not hold that mere participation was itself sufficient to establish prejudice. Rather, under *Olano* the defendant must make a specific showing of prejudice. *Id.* at 740 (not "presum[ing] prejudice for purposes of the Rule 52(b) analysis here"). Mere participation by an alternate juror is not by itself sufficient for that showing. And to reiterate, Myers has not made a specific showing of prejudice in this case.

In addition, "a plain error affecting substantial rights does not, without more," require us to find reversible error, "for otherwise the discretion afforded by Rule 52(b) would be illusory." *Id.* at 737. Even if it were the case that an alternate's participation necessarily amounted to prejudice, there is simply no way that Myers can meet the fourth requirement of *Olano*. Courts may decline to notice a plain error affecting substantial rights when the evidence of the defendant's guilt is overwhelming. *See, e.g.*, *United States v. Bowens*, 224 F.3d 302, 314-15 (4th Cir. 2000); *United States v. Johnson*, 219 F.3d 349, 354 (4th Cir. 2000).

Myers neither claims that he is innocent nor that the judge or any juror was biased against him. Moreover, as the district court found, there was overwhelming evidence of his guilt:

> There was considerable evidence adduced at trial that the defendant distributed drugs to Robert Shilot; that in the process of distributing drugs, the defendant used a firearm; that the firearm which the defendant used had an obliterated serial number and the defendant knew it; and that the defendant attempted to corruptly persuade Kelly Ward to give false information to authorities investigating the crime.

Ward testified that she saw Myers deal crack to Shilot, possess a firearm, and shoot Shilot. In addition, the state's chief medical examiner testified to the presence of crack in Shilot's system, corroborating Ward's testimony. Further, the police searched Myers' car and found

the firearm that was shown to be the one used to kill Shilot, as well as a bag containing crack cocaine. Finally, Myers confessed in a taped statement to possessing a firearm while being a felon and shooting Shilot. In view of the overwhelming evidence of Myers' guilt, our refusal to notice the error will not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. Nor will it result in any "miscarriage of justice." *Id.* at 736 (internal quotations omitted). In sum, we reject Myers' claim that the presence of the thirteenth juror in his case requires a new trial.

III.

Myers next contends that the district court abused its discretion by allowing the introduction and repeated use at trial of extremely prejudicial evidence. Myers claims that too much evidence regarding the details of the shooting and death of Shilot was submitted to the jury. He asserts that the court abused its discretion by not limiting what he calls the "murder" testimony once his use of a firearm was firmly established, and by refusing to exclude certain testimony about the gruesome details of Shilot's death.

Under Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." We must review the lower court's application of this balancing test with the broad deference that the abuse of discretion standard requires. *See, e.g.*, *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998).

The district court did not abuse its discretion. Given the testimony of the state police firearms expert that Myers' firearm was the one used to kill Shilot, the court correctly found that evidence regarding the shooting of Shilot had substantial probative value. It was directly relevant to whether Myers was a felon in possession of a firearm (Count I), whether he possessed and used a firearm in furtherance of drug trafficking (Counts II and III), and whether he knowingly possessed a firearm with an obliterated serial number (Count IV). *See, e.g.*, *Bailey v. United States*, 516 U.S. 137, 144, 148 (1995) (holding that the Government's burden under 18 U.S.C. § 924(c)(1) is to "show active employment of the firearm" during and in relation to a

drug trafficking offense, which "certainly includes . . . firing . . . a firearm").

In addition, the district court did not abuse its discretion in determining that the probative value of the shooting was not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. This evidence was certainly damaging to Myers and possibly prejudicial as well. But it was not unfairly prejudicial. *See United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (holding that murder evidence is admissible under Rules 403 and 404(b) where it concerns "acts intrinsic to the crime charged"); *United States v. Melton*, 970 F.2d 1328, 1336 (4th Cir. 1992) (holding that the probative value of evidence of an alleged murder by defendant convicted of drug-related offenses outweighed any potential prejudice). In fact, the court sought to minimize any prejudice to Myers. It did not permit the government to show inflammatory photographs depicting the body or bloody scene. It required the government to obtain an advance ruling before introducing any evidence depicting blood or any other indicia of violence. Far from committing any Rule 403 error, the district court acted out of a sense of caution and solicitude for Myers' rights.

IV.

Myers next argues that the district court committed reversible error by failing to specifically instruct the jury that it must unanimously agree upon which of four drug transactions in evidence satisfied the distribution element necessary for a conviction on the Count II charge of drug trafficking and on the Count III charge of possession and use of a firearm in furtherance of drug trafficking.[1] Citing *Richardson v. United States*, 526 U.S. 813, 817-20 (1999), Myers claims the facts indicate a significant probability that the jury was confused about which transaction it found to be an element of Counts II and III, and that there was no unanimous agreement on that element. Accordingly, Myers submits that his convictions under these counts should be reversed.

---

[1]Testimony was introduced at trial that, in addition to the sale to Shilot, Myers sold drugs three other times that same day.

Myers thus asks us to extend *Richardson* to his convictions under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). We need not decide this question. Assuming solely for the sake of argument that there was an error in the district court's instructions to the jury, we do not agree that a reversal is in order here. Because Myers neither objected to the instructions nor requested an instruction regarding unanimity as to a specific transaction, *Olano*'s plain error standard governs our review of this claim. *See* 507 U.S. at 731-32. Thus, Myers is required to show actual prejudice — i.e., that the failure to give the instruction resulted in his conviction. *See, e.g.*, *United States v. Stitt*, 250 F.3d 878, 884 (4th Cir. 2001); *United States v. Hastings*, 134 F.3d 235, 243-44 (4th Cir. 1998). Given the overwhelming evidence of drug distribution canvassed above, especially with respect to the transaction between Myers and Shilot, the likelihood that the jury was confused or less than unanimous on all of the four transactions in evidence is exceedingly remote. Indeed, it strains credulity to conclude that, in finding Myers guilty, the jury may not have been unanimous in concluding that he had distributed crack to Shilot. As a consequence, Myers cannot satisfy *Olano*'s third criterion that the error "affect[ ] substantial rights." 507 U.S. at 732. Nor can he meet *Olano*'s final requirement that the error "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.*

V.

Myers next maintains that 18 U.S.C. § 924(c)(1)(A) does not apply to his use of a firearm in this case. He reasons that the statute requires that the firearm be used "during and in relation to," or possessed "in furtherance of," a drug trafficking crime, but that his use of a firearm occurred well after all drug transactions had ended and did not relate to any of them.

We disagree. As an initial matter, Myers misstates the standard of review. He submits that we must determine *de novo* whether 18 U.S.C. § 924(c)(1)(A) encompasses his use of a firearm in this case, citing *United States v. Lowe*, 65 F.3d 1137, 1142 (4th Cir. 1995). But this question concerns the sufficiency of the evidence to support Myers' conviction. As we stated in *Lowe* itself, in reviewing the sufficiency of the evidence, "this court must view the circumstantial and direct evidence in the light most favorable to the government and

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 65 F.3d at 1142.

The issue Myers now raises on appeal is thus a jury argument. The reasons for the jury's rejection of it are not difficult to discern. Where there is overwhelming evidence that the defendant sold drugs to someone, proceeded to use the drugs with the same person to whom he sold them, and then shot and killed that very same person for allegedly taking more drugs than he paid for, there is ample reason for the jury to reject the defendant's contention that his sale of the drugs and his use of the firearm somehow constituted two distinct, unrelated incidents. Myers knew throughout the events in question that the firearm was in his car, and that he could retrieve it if necessary to further his drug distribution activities. And when he came to believe that Shilot had payed for fewer drugs than he took, that is exactly what Myers did. We therefore refuse to disturb the jury's verdict on appeal.

VI.

In addition, Myers asserts that the imposition of a life sentence without parole based on his conviction under Count I for possession of a firearm by a convicted felon is disproportionate under *Solem v. Helm*, 463 U.S. 277 (1983), and thus violates the Eighth Amendment. He further argues that the finding of premeditated murder by a preponderance of the evidence violates the "spirit" of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[2]

We review *de novo* Myers' constitutional challenge to the proportionality of his sentence. *See United States v. Kratsas*, 45 F.3d 63, 65 (4th Cir. 1995). Myers concedes that the life sentence imposed in this case does not exceed the statutory maximum under 18 U.S.C.

---

[2]In calculating Myers' sentence under the Sentencing Guidelines, the district court stated that it "would find by a preponderance of the evidence that Mr. Myers committed first-degree, premeditated murder when he shot Robert Shilot." The court thereby determined that a cross reference operated to cause his sentence to be considerably higher than it otherwise would have been. *See* U.S.S.G. § 2K2.1(c)(1)(B).

§ 924(e)(1).[3] Moreover, he is unable to direct our attention to any case in which this court has reversed a sentence that fell within the statutory range on grounds of disproportionality. The Eighth Amendment prohibits only those sentences that are "grossly disproportionate" to the crime. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem*, 463 U.S. at 288). It should be clear from our prior discussion of Myers' criminal misconduct that his Eighth Amendment claim has no more merit than others we have rejected. *See Kratsas*, 45 F.3d at 68-69.

Likewise, Myers' *Apprendi* argument fails in view of the fact that the life sentence he received does not exceed the statutory maximum under § 924(e)(1), and that this court does not extend *Apprendi* to determinations under the Sentencing Guidelines that do not exceed the statutory maximum. *See United States v. Pratt*, 239 F.3d 640, 648 (4th Cir. 2001) ("*Apprendi* . . . only applies to sentences 'beyond the prescribed statutory maximum.'") (quoting *Apprendi*, 530 U.S. at 490).

## VII.

Finally, Myers submits that the district court erred in allowing victim allocution testimony from Shilot's wife and mother and in imposing restitution because he was not convicted of "a crime of violence" within the meaning of Federal Rule of Criminal Procedure 32(c)(3)(E). He observes that the conviction on Count III for possessing and using a firearm in furtherance of drug trafficking provided the basis for the court's allowance of victim impact statements and its imposition of restitution, but that the predicate offense of drug trafficking is not a "crime of violence." He further submits that possession and use of a firearm in furtherance need not involve violence or a specific victim. Myers concludes that because there can be possession and use of a firearm in furtherance where no violence took place,

---

[3]The district court found that Myers was exposed to "a maximum of life" under Count One "because of his prior convictions." Myers has prior felony convictions for: (1) grand larceny; (2) first degree arson; (3) conspiracy to distribute cocaine; (4) use of a firearm during the commission of a drug offense; and (5) being a felon in possession of a firearm.

it follows that such possession and use of a firearm is not *ipso facto* a crime of violence where the underlying predicate offense is a drug trafficking crime.

We review questions of statutory interpretation *de novo*. *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994). Rule 32(c)(3)(E) allows victim allocution testimony at a defendant's sentencing "for a crime of violence," which is defined as "a crime that involved the use or attempted or threatened use of physical force . . . ." Fed. R. Crim. P. 32(f)(2).

The dispositive inquiry, then, is whether the crime for which Myers was convicted "involved the use or attempted or threatened use of physical force." We conclude that it does. In view of the jury's verdict on Count III and the nature of the evidence in the record that sustains it, there is no doubt that the crime for which Myers was convicted falls within this statutory definition. Myers suggests that the relevant question is whether the use of force is an element of the crime. But that formulation flies in the face of the plain language of the Rule, which uses the word "involved" and is silent with respect to the elements of the crime. It appears that Myers mistakenly relies upon definitions of crimes of violence used in Career Offender sentencing guidelines, where reference is made to the use of physical force as an element of the crime. *See* U.S.S.G. §§ 4B1.1 and 4B1.2(a)(1). Because Myers was convicted of a crime of violence under the appropriate definition, the district court was correct to allow victim allocution testimony and impose restitution.[4]

---

[4]As for the issue of restitution, 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(i) require the district court to order "that the defendant make restitution to the victim of the offense" where the offense is "a crime of violence," as defined in 18 U.S.C. § 16. One definition of "crime of violence" in § 16 is a felony "that, by its nature, involves a substantial risk that physical force against [a] person . . . may be used in the course of committing the offense." § 16(b). Because using firearms to further one's drug business clearly presents a "substantial risk" of "physical force," Myers' conviction on Count III falls within this definition.

## VIII.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.