STATE of Minnesota, Respondent,

v.

Edward Uriah ROBERTS, Appellant.

No. C8–01–1430.

Court of Appeals of Minnesota.

Sept. 24, 2002.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul; and Ted Alliegro, Chisago County Attorney, Center City, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by
ANDERSON, Presiding Judge,
LANSING, Judge, and KALITOWSKI,
Judge.

## OPINION

LANSING, Judge.

This appeal from felony convictions raises two jury-composition issues. The first issue involves the number of jurors required by the Minnesota Constitution and permitted by the Minnesota Rules of Criminal Procedure. The second involves the method by which a jury can be reduced to a number less than that selected for trial. We conclude that a defendant's waiver of his right to a twelve-person jury and agreement to allow an alternate to deliberate is not constitutional or plain error. But it is plain error for the district court, without the defendant's personal agreement, to excuse a juror after deliberations have begun. We therefore reverse and remand for a new trial.

## FACTS

The state charged Edward Roberts with second-degree intentional murder, aiding and abetting intentional second-degree murder, and aiding and abetting first-degree assault. In the jury selection proceedings, the district court empaneled twelve jurors and two alternates. Before the jury was sworn, the court, with the consent of all parties, discharged one of the jurors because of a health problem. The trial proceeded with twelve jurors and one alternate.

At the conclusion of the charge conference, the district court proposed to trial counsel that the one remaining alternate be allowed to deliberate with the twelve jurors. The court specified that conviction would still require a unanimous verdict. Trial counsel agreed on the record to allow the alternate to deliberate. Defense counsel, with Roberts present, stated he had discussed this issue with Roberts, and Roberts was agreeable to letting the alternate deliberate. Defense counsel stated: "The record should reflect that I did confer with Mr. Roberts about that, and that was his wish as well. Is that right, Mr. Roberts?" Roberts responded, "Yes."

Before instructing the jury, the district court informed the jurors that both counsel had agreed that the alternate would deliberate with the other jurors. The court told the jury, "[y]ou can ignore the whole concept of an alternate. You are all jurors to make the decision. And if any time before you start your deliberations, or even during the deliberations, a juror should become sick or something, fine, that juror can be excused and the remaining twelve would be the deciding jurors."

The jury retired to begin deliberations in the afternoon. After deliberating three hours, the jury told the bailiff that they wanted to recess for the evening and return the next morning. One of the jurors sent a message to the court, through the bailiff, asking to be excused because of a commitment in Texas that required him and his wife to leave town the next morning. The district court assembled the jurors in the courtroom without trial counsel present. The court stated that the prosecution had no objection to discharging the juror but defense counsel had not yet responded to the request. The court indicated that defense counsel wanted to think about it, would probably agree, but likely wanted first to talk to his client. The court, apparently believing that it was necessary to make a decision and that the twelve remaining jurors could proceed without the additional juror, granted the juror's request to be discharged.

The twelve remaining jurors returned to continue deliberating the next morning. After five hours the jury returned a verdict of guilty on aiding and abetting second-degree murder and aiding and abetting first-degree assault. Defense counsel did not object to the juror's discharge until after the trial.

## ISSUES

I. Notwithstanding the stipulation of counsel and the personal waiver of the defendant, did the district court violate the Minnesota Constitution and the Minnesota Rules of Criminal Procedure by allowing the alternate to participate in the jury deliberations, thus increasing the size of the jury to thirteen?

II. Does the district court's discharge of a juror during deliberations, without the defendant's consent, result in reversible error?

## ANALYSIS

On appeal, Roberts raises two claimed errors in jury composition that he did not

object to at trial. Failure to object to an alleged error in the district court generally constitutes waiver of the right to raise the issue on appeal. *State v. Vick,* 632 N.W.2d 676, 684–85 (Minn.2001) (applying waiver standard to evidentiary error). But an appellate court may still consider a waived issue if it is (1) error, (2) that is plain, and (3) the error affects the defendant's substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998); Minn. R.Crim. P. 31.02 (plain error rule). If the defendant establishes plain error that affects substantial rights, then the appellate court assesses whether it should address the error to ensure fairness and the integrity of the judicial proceeding. *Id.* Plain-error analysis is not completely consonant with affirmative waiver requirements, but its application has not been specifically disputed in this appeal, and the facts support a claim that an objection could have been interposed in court in the first instance and, in the second instance, when the attorney was contacted by phone.

## I

■ In 1970, the United States Supreme Court determined that a twelve-person jury is not an indispensable component of the Sixth Amendment's jury-trial guarantee. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). Following the decision in *Williams,* the Minnesota legislature amended Minn.Stat. § 593.01 (1969) to provide for a six-person jury in misdemeanor cases. 1971 Minn. Laws ch. 917, § 1. In 1988, our supreme court interpreted Article I, section 6 of the Minnesota Constitution to guarantee a jury of twelve persons in all criminal prosecutions and declared Minn.Stat. § 593.01 (1986) unconstitutional. *State v. Hamm,* 423 N.W.2d 379 (Minn.1988). Later in 1988, the people of Minnesota amended the constitution to provide for a twelve-person jury for felonies and to permit the legisla-

ture to specify the number of jurors, not less than six, in all other criminal prosecutions.

The Minnesota Rules of Criminal Procedure, promulgated by the Minnesota Supreme Court, provide that a defendant may waive his or her right to the number of jurors required by law and stipulate that the jury shall consist of a lesser number. Minn. R.Crim. P. 26.01, subd. 1(4). The court may not approve such a stipulation unless the defendant, personally in writing or orally on the record, agrees to trial by the reduced number of jurors. *Id.* Roberts argues that because the rules of criminal procedure do not specifically provide for stipulation to a number *greater* than that provided by law, the thirteen-person jury was a violation of his jury-trial guarantee under the state constitution.

■ We start from the fundamental proposition that in a felony prosecution the Minnesota Constitution provides for a jury of twelve persons, no more and no fewer. Minn. Const. art. I, § 6 ("[i]n all prosecutions of crimes defined by law as felonies, the accused has the right to a jury of 12 members"). But fundamental constitutional rights can be waived if the waiver is knowing, intelligent, and voluntary. *State v. Ross,* 472 N.W.2d 651, 653–54 (Minn. 1991) (upholding knowing and voluntary waiver of jury trial and agreement to bench trial); *see also United States v. Olano,* 507 U.S. 725, 732–33, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (noting defendant who knowingly and voluntarily pleads guilty cannot have his conviction vacated on grounds that he ought to have had a trial).

Under the Minnesota Rules of Criminal Procedure, the constitutional right to a jury of a minimal number is waivable. Minn. R.Crim. P. 26.01, subd. 1(4). The rules establish that the right to a specific

number is an important right because the procedures that accompany the waiver are formal: the trial attorneys must stipulate, the defendant must personally agree in writing or orally on the record, and the judge must permit the variance. In Roberts's trial, the district court insured that these procedures were followed: the trial attorneys stipulated, Roberts stated his agreement orally on the record, and the court permitted it. The only deviation from Minn. R.Crim. P. 26.01, subd. 1(4), is that the waiver procedure was used to add a juror rather than subtract a juror to the number permitted by law.

In our view, it is significant that Minn. R.Crim. P. 26.01, subd. 1(4), does not prohibit the court from approving a stipulation for more than the number of jurors provided by law—it simply does not address it. It is reasonable that the drafters of the criminal rules would include a specific provision to deal with jury attrition. Alternate jurors who have not replaced a principal juror are discharged after the jury retires to consider its verdict. Minn. R.Crim. P. 26.02, subd. 8. A juror's inability to perform a juror's duties after the jury retires for deliberation results in a mistrial unless the parties, with the personal agreement of the defendant, stipulate to a lesser number than that selected for trial. *Id.* Thus, to avoid the time and expense of retrying a case, a procedure for juror attrition is necessary. But there is no equivalent practical necessity to expand the jury; therefore, it is not unusual that the rules do not include a provision for waiver to allow for a larger number of jurors than the number provided by law.

▬ Furthermore, waiver is a process that is not created by the constitution or the rules of criminal procedure. In general, the constitution creates or recognizes rights and the criminal rules provide procedures for the assertion or protection of

rights. Waiver, on the other hand, is the voluntary relinquishment of a known right. Consequently, the failure of either document to provide that a specific right or procedure is waivable is not likely to be determinative. The rules provide, instead, for procedural safeguards to ascertain that waiver is voluntary. *Ross,* 472 N.W.2d at 653 (purpose of district court's inquiry of defendant it to learn whether waiver is knowing and voluntary). The nature of the particular right defines the method of waiver. *See Olano,* 507 U.S. at 733, 113 S.Ct. at 1777, 123 L.Ed.2d 508. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id.*

Although Minnesota appellate courts have not addressed the issue of a consensual thirteen-person jury, this court has previously indicated that the waiver procedures in Minn. R.Crim. P. 26.01, subd. 1(4), would apply to an agreement to allow a greater number of jurors to deliberate. *State v. Washington,* 632 N.W.2d 758, 762 (Minn.App.2001) (declining to find waiver of right to six-person jury when defendant did not personally consent to a seven-person jury). The issue in *Washington* is comparable to the issue in this case because the district court in *Washington,* by allowing seven jurors rather than six, allowed a larger jury than is provided by law. *Id.*

▬ For these reasons, we conclude that it was not plain error to allow thirteen jurors to deliberate when trial counsel stipulated to this number and the defendant personally agreed. But even if a thirteen-member jury could be considered plain error, Roberts has failed to show that allowing thirteen jurors, rather than

twelve jurors, affected his substantial rights. *See Griller*, 583 N.W.2d at 741 (defendant must demonstrate that plain error affected substantial rights by showing that error was prejudicial and affected outcome of case).

We have previously decided that the failure to discharge an alternate juror is not so serious that in every situation it requires automatic reversal. *State v. Crandall*, 452 N.W.2d 708, 710–11 (Minn.App. 1990). Roberts has not demonstrated any prejudice in allowing thirteen jurors to deliberate. Roberts's attorney affirmatively assented to the procedure, Roberts consented to the procedure, and it was stipulated that all thirteen jurors would have to agree to Roberts's guilt before he could be convicted. As a federal court observed in similar circumstances, "[a]ll other things being equal, it cannot possibly be less difficult for the government to get thirteen jurors to agree that a defendant is guilty beyond a reasonable doubt than it is to get twelve to so agree." *United States v. Myers*, 280 F.3d 407, 412 (4th Cir.2002); *see also Ballew v. Georgia*, 435 U.S. 223, 234, 98 S.Ct. 1029, 1036, 55 L.Ed.2d 234 (1978) (Justice Blackmun observing that statistical studies suggest that the risk of convicting an innocent person rises as the size of the jury diminishes); *United States v. Reed*, 790 F.2d 208, 210 (2d Cir.1986) (stating that "we are satisfied that there is no likelihood whatever that a thirteen-man jury would convict more readily than would a twelve man jury").

Finally, Roberts has failed to show that the jury size affected the fairness, integrity or public reputation of the proceeding. *See Griller*, 583 N.W.2d at 740 (identifying fairness and integrity as basis for appellate court to exercise discretionary review). The procedure followed by the district court in this case, while perhaps unorthodox, was advanced with apparent good intentions and assented to by the defendant and his attorney in open court. Despite the questionable prudence of the procedure, the fairness or integrity of the proceeding was not compromised by the district court's action. *United States v. Bendek*, 146 F.3d 1326 (11th Cir.1998) (rejecting plain-error argument for permitting thirteen-member jury).

■ Even though we conclude that the departure did not result in plain error that requires reversal, we caution against the jury selection process that varies from the process provided by the rules. Departures from the norm of a jury of twelve on an ad hoc basis invite appeals and generally create more problems than they solve. Courts and parties should not readily agree to allow an alternate to participate in the deliberation of the verdict even when the alternate has "stuck through" a long trial. *See Reed*, 790 F.2d at 209–10.

## II

■ Roberts also claims it was plain error affecting substantial rights to dismiss one juror after deliberations had begun and permit the remaining twelve jurors to reach a verdict, without obtaining his personal consent. This argument is directly addressed by the Minnesota Rules of Criminal Procedure. Rule 26.02, subd. 8, governing alternate jurors, directs that the district court *shall* declare a mistrial if a juror becomes unable to serve or is disqualified from serving after deliberations have begun, "unless the [defendant agrees personally in writing or orally on the record] that the jury shall consist of a lesser number than that selected for the trial." Minn. R.Crim. P. 26.02, subd. 8; Minn. R.Crim. P. 26.01, subd. 1(4).

■ It is undisputed that neither Roberts nor his defense counsel agreed to continue deliberations with the remaining twelve jurors. Because the rules impose

an affirmative duty to obtain the defendant's personal waiver and the trial attorneys' stipulation, the failure to comply with the rule is plain error.

The more difficult issue is whether Roberts can establish that the error prejudiced the outcome of his trial. *See Griller,* 583 N.W.2d at 741 (on third prong of plain-error analysis, defendant bears a "heavy burden" of persuasion to show "the error was prejudicial and affected the outcome of the case"). In previous cases addressing jury irregularities we have held that errors affecting jury deliberations may give rise to a presumption of prejudice that, if unrebutted by the state, would satisfy the third prong of the *Griller* plain-error analysis. *See Crandall,* 452 N.W.2d at 711 (recognizing a rebuttable presumption of prejudice when alternate inadvertently joined the regular jury members for the first 20 minutes of deliberations); *see also State v. Cox,* 322 N.W.2d 555, 558–59 (Minn.1982) (statements of a court official made in the presence of the jury that affected the merits of the case created a rebuttable presumption of prejudice); *State v. Watkins,* 526 N.W.2d 638, 640–41 (Minn.App.1995) (accord); *State v. Washington,* 632 N.W.2d 758, 760–61 (Minn. App.2001) (applying presumption of prejudice when alternate was allowed to deliberate to verdict without knowledge or consent of defendant). We see no reason to depart from that approach in this case.

First, the criminal rules requirement for stipulation by trial counsel and personal waiver by the defendant suggests that some defects bearing on the jury's deliberative function are subject to reversal regardless of whether prejudice can be shown. Reconstituting a jury in the midst of jury deliberations presents substantive fair-trial and due process problems, and even when authorized, should be used sparingly. *People v. Ford,* 145 Misc.2d 308, 546 N.Y.S.2d 313, 316 (1989). Rule 26.02, subd. 8, mandates that the failure to obtain the stipulation of the parties and the defendant's personal waiver requires a mistrial. That rule operates as a presumption of prejudice. Second, discharging the juror may have violated Roberts's constitutional right to a unanimous verdict by the number of jurors selected for trial. *See Hamm,* 423 N.W.2d at 383–386 (noting the key components of the right to a jury trial are "number, impartiality, and unanimity"). The fact that the jurors in Roberts's trial knew that one juror could request discharge after deliberations had begun without triggering a mistrial created a substantial risk that a lone dissenting juror might feel pressured to—or might voluntarily—seek to be discharged in order to break a deadlock. The seriousness of this risk would also warrant a presumption of prejudice.

The state argues that Roberts should be required to make a "specific showing" that the outcome of his trial was affected by the discharge of the thirteenth juror and cites the United States Supreme Court's decision in *Olano* in support of that argument. We are not persuaded that *Olano* should change our analysis. First, the facts in *Olano* are significantly different. The two alternate jurors in *Olano* were allowed, with the knowledge of defense counsel, to observe the jury deliberations, but were instructed not to participate in any way. 507 U.S. at 737–39, 113 S.Ct. at 1779–80, 123 L.Ed.2d 508 (discussing several past decisions involving irregularities in jury deliberations). The Supreme Court concluded that no evidence suggests that the alternates had participated in any way and the mere presence of alternate jurors did not entail a significant risk of "chill" that would justify a presumption of prejudice. 507 U.S. at 740–41, 113 S.Ct. at 1781, 123 L.Ed.2d 508. We think it significant that in Roberts's trial the thirteenth juror fully

participated in the deliberations before he was discharged.

Because we are reversing and remanding for a new trial, we do not address the remaining issues raised in Roberts's primary brief. We have carefully examined the issues raised in Roberts's pro se brief and have found no argument that would warrant reversal other than those already addressed.

### DECISION

The district court did not violate the Minnesota Constitution or commit other plain error by permitting the alternate to deliberate with the twelve other jurors when the trial attorneys stipulated to the increased number of jurors and the defendant consented on the record. But it was plain error affecting substantial rights to dismiss one of the jurors after deliberations had begun without the personal consent of the defendant. We reverse and remand for a new trial.

**Reversed and remanded.**