**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TOMMY RICE,

*Defendant-Appellant.*

No. 02-4673

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

TOMMY RICE,

*Defendant-Appellee.*

No. 02-4751

Appeals from the United States District Court
for the District of South Carolina, at Spartanburg.
Margaret B. Seymour, District Judge.
(CR-01-887)

Argued: September 26, 2003

Decided: October 20, 2003

Before WILKINS, Chief Judge, TRAXLER, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

---

Affirmed in part, vacated in part, and remanded with instructions by
unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Rodney Wade Richey, RICHEY & RICHEY, P.A., Greenville, South Carolina, for Appellant. Elizabeth Jean Howard, Assistant United States Attorney, Greenville, South Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Greenville, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

A jury convicted Tommy Rice (Rice) of aiding and abetting the possession with the intent to distribute and the distribution of fifty grams or more of cocaine base (crack) in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). He was sentenced by the district court to 293 months' imprisonment. On appeal, Rice challenges both his conviction and sentence. The government cross-appeals, contending that Rice should have received a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A). We agree with the government that Rice's conviction should be affirmed and that his case should be remanded with instructions to the district court to impose a sentence of life imprisonment.

I

A

This case arose from an investigation conducted by a Drug Enforcement Administration (DEA) Mobile Enforcement Team (MET) into the drug distribution organization of one of Rice's codefendants, Tony Patterson (Patterson).[1] Patterson's organization distributed cocaine and crack in Spartanburg, South Carolina.

---

[1] DEA Agent Mario Lijoi testified that METs assist local law enforcement with investigating violent drug offenders who have been in business for extended periods of time.

In the winter of 2000, Rice began working for Patterson as a car washer at Patterson's business, Big Tee's Tires and Rims (Big Tee's). On August 9, 2001, Rice was present at Big Tee's when Gary Brown (Brown) sold two ounces of crack to William Skinner (Skinner), a DEA confidential informant. On that date, Rice rode with Brown to pick up the crack from LeSean Scurry. When they returned, Rice handed Patterson the two ounces of crack. Thereafter, Patterson returned the two ounces of crack to Brown who sold the crack to Skinner for $1700.

On August 14, 2001, Rice served as a lookout during another transaction involving Brown and Skinner. Skinner went to Big Tee's with $3,400 to purchase crack. When he arrived at Big Tee's, Skinner was met at the door by Rice who let Skinner inside the building and then locked the door behind him. Skinner, Brown, and Scott Broadus (Broadus) were all present during the transaction and testified that Rice acted as a lookout for police during this transaction. After the transaction, Skinner met with DEA agents and turned over the crack that was purchased for $3,400. Ivette Vallego, a DEA forensic chemist, testified that the substance seized on August 14, 2001 contained 105 grams of crack.

For his assistance to the Patterson drug distribution organization, it does not appear that Rice received any monetary compensation. Rather, for his assistance, Rice, who was a crack addict at the time, was purportedly provided crack and/or allowed to fuel his addiction by testing the crack prepared by Patterson.

B

On November 27, 2001, Rice was named in counts one and three of a five-count superseding indictment filed in the United States District Court for the District of South Carolina. Count one charged Rice with conspiracy to possess with the intent to distribute fifty grams or more of crack and more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count three charged that, on or about August 14, 2001, Rice possessed with the intent to distribute and distributed fifty grams or more of crack, and did aid and abet Brown and Broadus in the commission of the offense, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

On April 3, 2002, the government filed an information pursuant to 21 U.S.C. § 851 which notified Rice that he was subject to the enhanced penalties provided by 21 U.S.C. § 841(b)(1)(A) based on his prior felony drug convictions. Based on these convictions, Rice, upon conviction of either count one or three of the superseding indictment, was subject to a mandatory life sentence. *Id.*

The case proceeded to trial before the district court on April 23 and 24, 2002. The jury was unable to reach a verdict as to count one and a mistrial was declared on that count. As to count three, by special verdict, the jury convicted Rice of aiding and abetting the possession with the intent to distribute and the distribution of fifty grams or more of crack.

On July 30, 2002, after the district court concluded that the mandatory life sentence in this case was not disproportionate to the offense of conviction, Rice was sentenced to life imprisonment. On July 31, 2002, the district court filed an order staying entry of judgment in Rice's case in order to provide him an allocution opportunity. In its order, the district court also stated that it would hear arguments concerning any effect *Apprendi v. New Jersey*, 530 U.S. 466 (2000), might have on Rice's sentencing.

At the second sentencing hearing on August 6, 2002, the district court heard argument from the parties and Rice's allocution and found that a life sentence was unconstitutionally disproportionate to the offense of conviction because Rice was not a major dealer, made no money from his participation in Patterson's organization, and was not convicted on the conspiracy count, but rather was only convicted of aiding and abetting Brown and Broadus in the commission of the offense charged in count three. As a result, the district court ignored the mandatory sentence of life imprisonment and sentenced Rice based on a finding that he was accountable for 283.3 grams of crack and five kilograms of cocaine. This finding resulted in an offense level of thirty-four. Rice's criminal history category was five, producing a Guideline range of 235-293 months' imprisonment. Rice was sentenced to 293 months' imprisonment. Following the entry of judgment, Rice filed a timely notice of appeal and the government filed a timely notice of cross-appeal.

## II

Rice contends that there is insufficient evidence in the record to support his conviction for aiding and abetting the possession with the intent to distribute and the distribution of fifty grams or more of crack on August 14, 2001, 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). This contention is without merit.

When reviewing "the sufficiency of the evidence following a conviction, this court views the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir.) (citation and internal quotation marks omitted), *cert. denied*, 537 U.S. 1031 (2002). We must sustain the jury's verdict so long as there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942).

As applied to this case, the elements of possession with intent to distribute fifty grams or more of crack are as follows: (1) the possession of fifty grams or more of crack; (2) the knowledge of the possession; and (3) the intent to distribute the crack. *United States v. Crockett*, 813 F.2d 1310, 1316 (4th Cir. 1987) (possession with intent to distribute PCP). The elements of distribution of fifty grams or more of crack are as follows: (1) the distribution of fifty grams or more of crack; (2) the knowledge of the distribution; and (3) the intent to distribute the crack. *United States v. Tran Trong Cuong, M.D.*, 18 F.3d 1132, 1137 (4th Cir. 1994) (distribution of prescription controlled substances).

In this case, the evidence is more than sufficient to support Rice's conviction for aiding and abetting the possession with the intent to distribute and the distribution of fifty grams or more of crack. On the August 14, 2001 transaction at issue, Brown sold 105 grams of crack to Skinner. Skinner, Brown, and Broadus were all present during the transaction and testified that Rice acted as a lookout for police during the transaction. Obviously, Rice's role as a lookout aided and abetted Brown and Broadus in the possession with the intent to distribute and the distribution of fifty grams or more of crack. *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983) ("To be convicted of aiding and abetting, participation in every stage of an illegal venture is not required, only participation at some stage accompanied by

knowledge of the result and intent to bring about that result.") (citation and internal quotation marks omitted).

The gist of Rice's argument is that the testimony of Skinner, Brown, and Broadus should not be credited. For example, Rice suggests that Skinner's testimony should not be credited because he was cooperating with the government to avoid the implications of a December 2000 traffic stop in which he was found to have possessed two ounces of cocaine and a firearm. Rice further posits that Broadus and Brown's testimony should not be credited because they testified in hopes of obtaining a reduced sentence. We must reject Rice's attacks on the testimony of Skinner, Brown, and Broadus because we are not at liberty to question the jury's assessment of witness credibility. *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (*en banc*) (noting that the jury weighs the credibility of the evidence and credibility determinations are not susceptible to judicial review). In summary, there is sufficient evidence in the record to support Rice's conviction for aiding and abetting the possession with the intent to distribute and the distribution of fifty grams or more of crack.

### III

We now turn to the parties' arguments concerning the sentence imposed in this case. The government contends that Rice should have received the mandatory sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A). Rice contends that the district court was correct when it held that subjecting him to the mandatory sentence of life imprisonment would result in a constitutionally disproportionate sentence, but further contends that, once the district court correctly made this ruling, its selection of a 293-month sentence violated the dictates of *Apprendi*.

### A

At Rice's initial sentencing hearing on July 30, 2002, Rice moved for a downward departure, arguing that a life sentence violated the Eighth Amendment's Cruel and Unusual Punishment's Clause. The district court rejected that argument and imposed a sentence of life imprisonment, based on the following:

Mr. Rice has made a motion that the sentence of life without parole is disproportionate to the crime committed, and he argues that a life sentence constitutes cruel and unusual punishment.

The Supreme Court in these circumstances requires a proportionality analysis in cases involving life sentences without parole. And the Supreme Court has established a series of factors to be considered in determining whether a sentence is proportional to the crime committed.

And the first inquiry is to the gravity of the offense and the harshness of the penalty. And second, the court can look to the punishments that have been meted out for other crimes within the jurisdiction to determine whether the instant conduct is treated similarly to other crimes of similar gravity. And finally a court may find it useful to compare the sentence imposed in other jurisdictions for the same crime.

There's no question that the gravity of Mr. Rice's offense is great. As the Fourth Circuit has stated in the case of *United States versus D'Anjou*, drug use has become a pervasive and destructive force in American society. As stated in Mr. Rice's presentence report, Mr. Rice was present when drugs were sold. He converted powder to crack cocaine, and the jury found him guilty of the charge of aiding and abetting in possession with the intent to distribute fifty grams or more of crack cocaine.

While Mr. Rice may not have been the mastermind of this operation, he was tasked with significant responsibility. Therefore, given the substantial quantity of drugs involved here and Mr. Rice's position in the drug operation and the fact that he faces this enhanced penalty because of his extensive history of felony drug offenses, the court concludes that life without parole is not disproportionate to the crime involved.

(J.A. 329-30). On July 31, 2002, the district court stated in an order that it had not afforded Rice the opportunity to allocute and scheduled a second sentencing hearing for August 6, 2002.

At the August 6, 2002 sentencing hearing, Rice told the district court that:

> I never made any deals. I never received any money. I don't know transactions that never went as far as the law enforcement that they was making deals. As a matter of fact, every last one of them was caught making deals with drug enforcement agents. I was never caught being filmed selling any drugs to any drug enforcement agents. And the guys that did make transactions ended up with little amount of no time.
>
> And I just wanted to say that as far as receiving any money, I never received any large amount of money from no transactions. . . . Only money that I received is from my job washing cars. And that's the only money I received at any time.
>
> And . . . my bills was behind. And . . . if I was making that kind of money, my bills wouldn't be behind. I was behind on my probation fee. I was behind on my rent. I mean I wasn't making any money. If I be having two felonies, it was hard for me to get a job basically, and I just had to take whatever I could get. And he offered me a job to wash cars, and that's what I did.

(J.A. 340-41). After hearing from Rice, the district court concluded:

> [A]fter considering the defendant's statements with regard to his role in this case and the facts that came out in trial with regard to his role in this case, the fact that he — I think it was clear from the trial that he was not a major . . . dealer. He was not the ringleader in this case.
>
> I think it's clear that the defendant's statements and statements of others that have testified that he did not receive any reward or any money personally as a result of any activity he engaged in, and the fact that the jury found that he aided and abetted, but did not find him guilty of conspiracy

> charges, I find that his level of participation in this case . . .
> does not rise to a level that would justify a life sentence.

(J.A. 343-44). The district court then sentenced Rice to 293 months' imprisonment, which was within the Guideline range (as calculated by the district court following its findings concerning the amount of drugs attributable to Rice and Rice's criminal history) had the mandatory sentence of life imprisonment not been applicable.

B

The record in this case leaves no doubt that Rice should have been sentenced to life imprisonment. Count three of the superceding indictment charged that, on or about August 14, 2001, Rice possessed with the intent to distribute and distributed fifty grams or more of crack, and did aid and abet Brown and Broadus in the commission of the offense, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). On April 3, 2002, the government filed an information pursuant to 21 U.S.C. § 851 which notified Rice that he was subject to the enhanced penalties provided by 21 U.S.C. § 841(b)(1)(A) based on his prior felony drug convictions.[2] Based on these convictions, Rice, upon conviction of either count one or three of the superseding indictment, was subject to a mandatory life sentence. *Id.* Rice was ultimately convicted under count three of aiding and abetting the possession with the intent to distribute and the distribution of fifty grams or more of crack, 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), and this conviction subjected him to a mandatory life sentence because, as an aider and abettor, Rice was subject to punishment as a principal. 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). Because the statutory *minimum* sentence—life—was greater than the maximum Guideline sentence—293 months—Rice should have been sentenced to a term of life imprisonment. United States Sentencing Commission, *Guidelines Manual* (USSG) § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline

---

[2]There appears to be no dispute that Rice has at least two prior felony convictions as required by 21 U.S.C. § 841(b)(1)(A).

range, the statutorily required minimum sentence shall be the guide-line sentence.").

To be sure, while a district court may depart below the sentencing range established by the Sentencing Guidelines, such a departure generally may not result in a sentence below the minimum term specified in the offense of conviction. 18 U.S.C. § 3553(e) (limiting authority of district court to depart below statutory minimum to cases in which the government has moved for such a departure on the basis of substantial assistance); *United States v. Patterson*, 38 F.3d 139, 146 n.8 (4th Cir. 1994) (observing that "[t]he district court could have sentenced below the statutory minimum only if this departure was based on the Government's motion for downward departure due to Defendant's substantial assistance"); *cf.* 18 U.S.C. § 3553(f) (safety valve provision) (limiting applicability of statutory minimum penalties for certain drug offenses when specified criteria are met); USSG § 5C1.2 (same). In this case, there was simply no basis for the district court to ignore the mandatory life sentence. The government did not make a substantial assistance motion and the safety valve provision obviously did not apply (Rice had too many criminal history points).

Finally, it should be noted that Rice's sentence is not disproportionate in a constitutional sense. In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. To determine whether a sentence is proportionate to the crime committed under *Solem*, we must consider: "(1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Kratsas*, 45 F.3d 63, 66 (4th Cir. 1995).[3]

---

[3]In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Supreme Court rejected a claim that a mandatory life sentence without parole constituted cruel and unusual punishment for a defendant convicted of possessing more than 650 grams of cocaine. *Id.* at 996 (plurality opinion). As we noted in *Kratsas*, the Supreme Court's decision in *Harmelin* makes it somewhat unclear as to whether *Solem*'s three-part proportionality test should still be applied in noncapital cases. *Kratsas*, 45 F.3d at 67. Nonetheless, we have continued to use the *Solem* factors in cases involving a sentence of life without the possibility of parole. *Id.*

With regard to the *Solem* factors, aiding and abetting drug trafficking is an extremely grave offense with far-reaching effects. As we noted in *United States v. D'Anjou*, crack use has become a "pervasive, destructive force in American society." 16 F.3d 604, 613 (4th Cir. 1994). Moreover, Rice's offense was graver because he is a repeat drug offender. *Kratsas*, 45 F.3d at 68. Thus, the gravity of Rice's offense supports a severe sentence. Applying the second prong of *Solem*, it is clear that a life sentence for a drug violation by a repeat drug offender is not disproportionate with other sentences mandated by the Sentencing Guidelines. *Cf. D'Anjou*, 16 F.3d at 613 ("[A] life sentence for a major drug violation is not disproportionate in comparison with other sentences under the Guidelines."). Finally, applying the third prong of *Solem*, a survey of drug statutes in states within this circuit reveals the existence of harsh sentences for drug violations of the magnitude involved here. *See, e.g.*, S.C. Code Ann. § 44-53-370(e)(2)(c), (d) (twenty-five year mandatory minimum sentence for drug offense involving 100 or more, but less than 400, grams of cocaine); Va. Code Ann. § 18.2-248(C) (providing for sentence of up to life imprisonment for third drug offense). Therefore, after considering the *Solem* factors, one must conclude that a life sentence in this case is not constitutionally disproportionate. *Cf. Lockyer v. Andrade*, 123 S. Ct. 1166, 1172-75 (2003) (holding that the state court's affirmance of two consecutive 25-years-to-life sentences for petty theft was not contrary to or an unreasonable application of federal law); *Harmelin*, 501 U.S. at 996 (plurality opinion) (sentence of life imprisonment without parole for first time drug offender convicted of simple possession of 650 grams of cocaine is not constitutionally disproportionate); *Kratsas*, 45 F.3d at 65 (noting that "the law is well settled that mandatory life sentences are constitutional when applied to prior drug felony offenders"); *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994) (holding that a mandatory life sentence without the possibility of parole for a third-time offender who committed a § 841(a)(1) offense involving 177.8 grams of crack "was not so grossly disproportionate . . . as to violate the Eighth Amendment").[4]

---

[4]We note that Rice's life sentence does not violate the dictates of *Apprendi*. In *Apprendi*, the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be charged in the indict-

IV

We understand what the district court was trying to accomplish here. Rice was a relatively minor participant in the August 14, 2001 drug transaction and participated in this transaction not to make money but rather only to obtain some crack to fuel his unfortunate addiction to the drug. The district court understandably was compassionate, trying to give a break to an individual whom it deemed unworthy of a mandatory life sentence. The mandatory life sentence in this case may well reflect some of the inequities involved in the imposition of mandatory minimum sentences and any argument here is with the mandatory life sentence mandated and not with the compassionate rationale of the district judge. Indeed, mandatory minimum sentences are designed to ensnarl the most culpable, but all too often they capture many who are considerably less culpable. Moreover, mandatory minimums often do not take into account the defendant's role in the offense, which more accurately reflects the dangerousness and the culpability of the defendant. However, even though we may feel that the district court ultimately imposed a just sentence of 293 months' imprisonment, we are not at liberty to disturb a mandatory sentence of life imprisonment that is consistent with the Sentencing Guidelines, the will of Congress, and the proportionality principles laid down by the Supreme Court and this court. Consequently, we are constrained to vacate Rice's sentence and remand the case to the district court with instructions to sentence Rice to a term of life imprisonment for his conviction for aiding and abetting the possession with

---

ment, submitted to a jury, and proved beyond a reasonable doubt. 530 U.S. at 490. *Apprendi* specifically excluded enhancements which are based on prior convictions from its holding. *Id.* Because the mandatory life sentence in this case was based on Rice's prior convictions, *Apprendi* is not applicable. *Id.* In any event, *Apprendi* does not apply to facts which increase the mandatory minimum so long as the sentence is not extended beyond the statutory maximum. *United States v. Kinter*, 235 F.3d 192, 199-202 (4th Cir. 2000) (holding that *Apprendi* does not apply to district court's exercise of discretion within statutory range, as long as sentence imposed does not exceed statutory maximum), *cert. denied*, 532 U.S. 937 (2001).

the intent to distribute and the distribution of fifty grams or more of crack.[5]

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*

---

[5]We grant the government's unopposed motion to file a supplemental appendix.